UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASMIN R. FRANCIS, individually, and on behalf of all other similarly situated consumers,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL REVENUE CORPORATION,<br><br>Defendant. | Case No.: 1:18-cv-06955<br><br>**RULE 56 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Jasmin Francis ("Plaintiff"), by and through her attorneys Zemel Law LLC, respectfully submits the following Statement of Material Facts in Support of Motion for Partial Summary Judgment as follows:

1. Plaintiff Jasmin Francis filed a Complaint against Defendant in 2018, alleging that GRC's collection letter violated the FDCPA because it was false, deceptive and misleading as it sought to collect illegal and excessive collection costs and late fees. [ECF 1].

2. In her Second Amended Complaint, Plaintiff alleges on behalf of herself and a proposed class that their underlying contract with Cornell University does not provide for late fees and excessive collection costs which exceed 45% of the underlying debt. (*See* Decl. of Daniel Zemel (hereinafter "Zemel Decl."), Exhibit A, Second Amended Complaint).

3. Jasmin Francis ("Plaintiff") is a consumer as defined by 15 U.S.C. 1692a and the debts at issue in this case were student loan debt incurred from Cornell University. (*See* Zemel Decl., Exhibit B, Cornell Loan Agreement/ Promissory Note.)

1

4. Defendant General Revenue Corporation ("Defendant" or "GRC")) is a debt collector as defined in 15 U.S.C. 1692a. (*See* Zemel Decl., Exhibit C, 11:4-5, 14:6-9).

5. In 2010, Plaintiff incurred a personal student loan obligation from Cornell University. (*See* Zemel Decl., Exhibit B).

6. Prior to receiving private education loans from Cornell, Plaintiff and all other proposed class members were required to sign a Loan Agreement (also called a Master Promissory Note). (*See* Zemel Decl., Exhibit D, Affidavit from Cornell University, para. 4; Exhibit B).

7. The Loan Agreements used by Cornell have been standard since 2008, however, the rates of interest have varied. ). (*See* Zemel Decl., Exhibit D, para. 5).

8. In addition, every student that obtains student loans directly from Cornell University, is required to complete and sign an Exit Interview contract in order to graduate and receive their diplomas; however, Cornell does not provide any additional consideration to students prior to obtaining executed Exit Interview contracts. (*See* Zemel Decl., Exhibit D, para. 8-10, Exhibit E, Exit Interview).

9. All Loan Agreements between Cornell University and student borrowers have the following provision which has been unchanged since 2008:

> Late payments will not affect the ANNUAL PERCENTAGE RATE, but will increase the total FINANCE CHARGE as a result of the longer period to which the ANNUAL PERCENTAGE RATE will be applied to the unpaid balance of the amount financed. Upon default, Cornell University may accelerate repayment by declaring all or any part of the remaining indebtedness immediately due and payable without presentation, demand or notice, all of are hereby expressly waived. I promise to pay all attorney's fees and other reasonable collection costs and charges necessary for the collection of any amount not paid when due.

(*See* Zemel Decl., Exhibit D, para.7; Exhibit B). There is no mention of late fees. *Id.*

10. Cornell University has a collection contract with GRC and for each student loan account transferred to General Revenue Collection, Cornell University identifies the year that the Loan Agreement was executed. (*See* Zemel Decl., Exhibit D, para. 11).

11. GRC has collected late fees for debts incurred with Cornell University since the contract between Defendant and Cornell was entered into. (*See* Zemel Decl., Exhibit C, Butts Deposition, 34:15-35:3).

12. Within GRC's computer system, it will identify whether it can collect late fees and collection costs on that particular debt based on the information entered. (*See* Zemel Decl., Exhibit C, 46:1-15).

13. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Zemel Decl., Exhibit C, 20:10-23:5, Exhibit L, pages 7-8). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Zemel Decl., Exhibit C, 67:13-68:10, Exhibit L, pages 7-8). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Zemel Decl., Exhibit C, 87:10-17, Exhibit L, pages 7-8).

14. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Zemel Decl., Exhibit C, 69:8-70:19). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Zemel Decl., Exhibit C, 75:10-18; 76:1-77:3). This

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

(*See* Zemel Decl., Exhibit L, page 8).

15. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇ (*See* Zemel Decl., Exhibit C, 135:13-24; 136:1-18).

16. On May 31, 2018, Plaintiff received a collection letter from Defendant attempting to collect on said debt, allegedly due and owing. (*See* Zemel Decl., Exhibit F)

17. Within the letter, GRC attempts to collect $3,729.21 in principal and "collection costs" of $1,680.04 and late fees of $18.34. (*See* Zemel Decl., Exhibit F).

18. Ms. Francis' account was a considered a "second referral" meaning it had previously been placed with another collection agency. (*See* Zemel Decl., Exhibit C, 30:1-4). ▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇, beginning on the first day of collection regardless of the fact that no collection activities had yet occurred. (*See* Zemel Decl., Exhibit F; Exhibit C, 77:20-78:6). In other words, GRC's fee has no association with the actual cost of collection. *Id*.

19. On June 18, 2018, GRC sent Plaintiff a collection letter with collection costs of $1,684.96. (*See* Zemel Decl., Exhibit G, June 18, 2018 Letter).

20. On July 10, 2018, GRC sent Plaintiff a collection letter with collection costs $1,690.98. (*See* Zemel Decl., Exhibit H, July 11, 2018 Letter).

21. On September 10, 2018, GRC sent Plaintiff a collection letter with collection costs $1,707.92. (*See* Zemel Decl., Exhibit I, September 10, 2018 Letter).

22. On December 7, 2018, GRC sent Plaintiff a collection letter with collection costs $1,731.98. (*See* Zemel Decl., Exhibit J, December 7, 2018 Letter).

23. The only reason the collection costs increased over the course of one month was due to the fact interest was increasing and was not tied to any actions taken by GRC, specifically the amount did not increase due to an increase in the number of calls made or letters sent to Plaintiff. (*See* Zemel Decl., Exhibit C, 84:17-86:21).

24. Given that interest is accruing daily, the collection costs are also accruing daily and as of the date of any given letter, the amount owed is actually higher than stated, but the consumer is not informed of this information. (*See* Zemel Decl., Exhibit F-H; Exhibit C, 79:7-23. In fact, GRC confirmed the consumer is not made aware of the percentage GRC is going to collect for a collection cost on a debt. (*See* Zemel Decl., Exhibit C, 127:2-14).

25. GRC sends the same auto-populated form letter to all consumers who have debts which GRC is attempting to collect on behalf of Cornell University. (*See* Zemel Decl., Exhibit C, 101:6-102:20, 104:4-8). As such, if the particular form letter was sent to multiple consumers, the letter would vary only as to the consumer's specific information, such as name and balance owed. (*See* Zemel Decl., Exhibit C, 105:5-12).

26. On the letters sent to Ms. Francis and other consumer debtors, there is also a balance noted as "Other Amount" which is attributable to late fees charged on the account. (*See* Zemel Decl., Exhibit C, 106:24-107:25).

27. The collection costs sought on all of GRC's letters represents only an estimate of the collection costs which GRC would be entitled to under its contract with Cornell if the entire balance is collected as Cornell allows GRC to negotiate settlement of its debts

5

which in turn may represent a smaller amount of collection costs provided to GRC. (*See* Zemel Decl., Exhibit C, 75:12-18, 137:15-18, 138:24-139:8).

28. The consumer is not advised in the collection letter that the amount of collection costs is merely an estimate, not a concrete amount. (*See* Zemel Decl., Exhibit F).

29. Contrary to GRC's representations, the failure to pay the debt resulted in a decrease of the total balance due for Ms. Francis. In 2019, her debt was removed from GRC and given to Williams & Fudge, another debt collector. *See* Zemel Decl., Exhibit K, Williams & Fudge May 2019 Letter).

30. The May 2019 Letter from Williams & Fudge sought to collect a total balance of $6,673.41, representing only $1,334.68 in collection costs, less than the amount sought nearly one year prior and nearly $250 less than the amount sought in the December 2018 GRC Letter. (*See* Zemel Decl., Exhibits F, J, K).

31. Between May 2018 and December 2018, GRC never increased the amount of late fees sought from Plaintiff. (*See* Zemel Decl., Exhibits F, G, H, I, J, Exhibit C, 65:15-18).

32. Nonetheless, each collection letter sent by GRC states: late charges may vary from day to day. (Zemel Decl., Exhibits F, G, H, I, and J).

Dated: February 27, 2020

                                    Respectfully submitted,

                                    */s/ Daniel Zemel*
                                    Daniel Zemel, Esq.
                                    **Zemel Law, LLC**
                                    1373 Broad Street, Suite 203-C
                                    Clifton, New Jersey 07013
                                    (T) 862-227-3106
                                    dz@zemellawllc.com