UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JASMIN R. FRANCIS, individually, and on behalf of other similarly-situated consumers, | ) | Case No.:  1:18-cv-06955-BMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | |
| GENERAL REVENUE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

_____

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF<br>JASMIN R. FRANCIS'S MOTION FOR SUMMARY JUDGMENT</u>
_____

Respectfully Submitted,


<u>/S/ Daniel Zemel, Esq.</u>
Daniel Zemel, Esq. (DZ9899)
Elizabeth Apostola, Esq. (EA0423)
**Zemel Law LLC**
1373 Broad St., Suite 203-C
Clifton, New Jersey 07013
(P) (862) 227-3106
dz@zemellawllc.com
ea@zemellawllc.com
Attorneys for Plaintiff and the
Proposed Class

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ............................................................................................1

II.   STANDARD OF REVIEW ...............................................................................................1

III.  STATEMENT OF FACTS ................................................................................................2

IV.  ARGUMENT ....................................................................................................................2

    A.   Late Fees .....................................................................................................................5

    B.   Collection Costs .........................................................................................................7

        1.    GRC's Contract With Cornell Does Not Result In "Express" Consent As Required By 15 USC § 1692f ....................................................................................................................7

        2.    Defendant's 45% Fee Is Merely an Estimate of What May Be Due ..........................12

        3.    GRC's 45%-and-Rising Collection Cost is Not "Reasonable"...................................14

        4.    GRC's Collection Fee Is An Overcalculation Because It Includes Unlawful Late Fees ……………………………………………………………………………………..15

        5.    Defendant's Fee Is an Overcalculation Because It Seeks a Greater Amount than Allowed by Contract with Cornell ...........................................................................................16

V.   CONCLUSION ...............................................................................................................17

**TABLE OF AUTHORITIES**

Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364 (3d Cir. 2011)........................................5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). ..........2

Ardino v. Solomon & Solomon, P.C., 2014 U.S. Dist. LEXIS 8638 (D.N.J. 2014).....................12

Aubrey v. McCabe Trotter & Beverly, P.C., 2018 U.S. Dist. LEXIS 136878 (D.S.C. 2018).......12

B.F. Goodrich v. Betkoski, 99 F.3d 505 (2d Cir. 1996)...................................................................2

Boucher v. Fin. Sys. of Green Bay, 880 F.3d 362 (7th Cir. 2018)..................................................6

Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606 (11th Cir. 2014). ............................9, 11

Braham v. Clancy, 425 F.3d 177 (2d Cir. 2005) .............................................................................1

Campbell v. MBI Assocs., Inc., 98 F. Supp. 3d 568 (E.D.N.Y. 2015 .............................................5

Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993). ........................................................................3

Douglass v. Convergent Outsourcing, 765 F.3d 299 (3d Cir. 2014)...............................................3

Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech., 214 F. Supp. 2d 273 (E.D.N.Y.

    2002); ...........................................................................................................................................2

Fuentes v. AR Res., Inc., 2017 U.S. Dist. LEXIS 48923 (D.N.J. 2017).........................................5

Gathuru v. Credit Control Servs., 623 F. Supp. 2d 113 (D. Mass. 2009) ....................................12

Genova v. IC Sys., 2017 U.S. Dist. LEXIS 80046 (D.N.J. May 25. 2017) ...................................12

Heredia v. Capital Mgmt. Servs., L.P., 2019 U.S. App. LEXIS 33444 (7th Cir. 2019) .................7

Hernandez v. Miracle Fin., Inc., 2011 U.S. Dist. LEXIS 144356 (D.N.J. 2011)..........................12

Islam v. Am. Recovery Serv., No. 17-cv-4228 (BMC), 2017 U.S. Dist. LEXIS 180415 (E.D.N.Y.

    2017).............................................................................................................................................7

Jamaica Ash & Rubbish Removal Co. v. Ferguson, 85 F. Supp. 2d 174 (E.D.N.Y. 2000).............1

Kaymark v. Bank of Am., N.A., 783 F.3d 168 (3d Cir. 2015) ........................................................8

Kojetin v. C U Recovery, Inc., 1999 U.S. Dist. LEXIS 10930 (D. Minn. 1999)................8, 10, 11

Marks v. New York Univ., 61 F. Supp. 2d 81 (S.D.N.Y. 1999) ........................................................2

McCarthy v. Am. Int'l Grp., Inc., 283 F.3d 121 (2d Cir. 2002). ...................................................14

McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240 (3d Cir. 2014). .....................9, 12

Medzhidzade v. Capital Mgmt. Servs., LP, 2018 U.S. Dist. LEXIS 73428 (E.D.N.Y. 2018).........7

Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985)..................................................................................2

Mellon Bank, N.A. v. United Bank Corp., 31 F.3d 113 (2d Cir. 1994).........................................15

Munoz v. Pipestone Fin., LLC, 513 F. Supp. 2d 1076 (D. Minn. 2007) .......................................11

Nicholas Laboratories, Ltd. v. Almay, Inc., 900 F.2d 19 (2d Cir. 1990)......................................14

Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029 (2019)....................................................8

Podell v. Citicorp Diners Club, Inc., 112 F.3d 98 (2d Cir. 1997)...................................................2

Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379 (3d Cir. 2000). .................................5, 10, 11, 12

Raytman v. Jeffrey G. Lerman, P.C., 2018 U.S. Dist. LEXIS 180075 (S.D.N.Y. 2018). ..............3

Richard v. Oak Tree Grp., Inc., 614 F. Supp. 2d 814 (W.D. Mich. 2008),.....................................9

Russell v. Equifax A.R.S. and CBI Collections, 74 F.3d 30 (2d Cir. 1996). ..................................3

Shepherd v. Liberty Acquisitions, LLC, 2012 U.S. Dist. LEXIS 94199 (D. Colo. 2012).............12

Simmet v. Collection Consultants of California, 2016 U.S. Dist. LEXIS 72809 (C.D.Ca. 2016)...4

Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349 (D. Mass. 2008). .............................10, 12

Stall v. First Nat'l Bank of Buhl, 375 N.W.2d 841 (Minn. Ct. App. 1985) ..................................12

Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C., 2005 U.S. Dist. LEXIS
    32404 (W.D. Mich. 2005), ................................................................................................10, 11

Tuttle v. Equifax Check, 190 F.3d 9 (2d Cir. 1999). ............................................................5, 6, 11

Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 930 F.2d 1021 (2d Cir. 1991).
    ................................................................................................................................................14

## I.     PRELIMINARY STATEMENT

Defendant General Revenue Corporation ("GRC" or "Defendant") is good at its job. Too good. The reason Defendant is so good at collections is because Defendant seeks to collect more than the debt actually owed. Defendant does this by seeking unauthorized late fees and excessive collection costs from unsuspecting and unsophisticated consumers. The problem with these actions is that Congress did not like the idea of debt collectors adding on their own illegitimate fees. Thus, within the Fair Debt Collection Practices Act (FDCPA), Congress specifically prohibited debt collectors from implying they have the ability to collect fees and amounts they are not entitled to, and prohibited attempts to collect those amounts. This prohibited conduct is exactly what Defendant did to Plaintiff Jasmin Francis ("Francis" or "Plaintiff"), and each member of the putative class. Thus, Summary Judgment in favor of Ms. Francis is appropriate.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Fed. R. Civ. P. 56(e); *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000)(*citations omitted*). When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Braham v. Clancy*, 425 F.3d 177, 181 (2d Cir. 2005) (*internal citations omitted*). The non-moving party, however, "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc*., 112 F.3d 98, 101

1

(2d Cir. 1997)(*internal quotations omitted*). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The trial court's responsibility is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (*internal citations omitted*). "To overcome a properly asserted motion for summary judgment, a non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 279-80 (E.D.N.Y. 2002); *citing Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999) (*quoting Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985)). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks,* 61 F. Supp. 2d at 88.

### III.   STATEMENT OF FACTS

Plaintiff incorporates by reference Plaintiff's Rule 56 Statement of Undisputed Material Facts, the Declaration of Daniel Zemel and the attached Exhibits.

### IV.   ARGUMENT

2

The FDCPA was enacted by Congress "to eliminate abusive debt collection practices by debt collectors." In furtherance of this goal, the FDCPA expressly prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Further, Section e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." 15 U.S.C. 1692e(10). Defendant's letter contains false and deceptive representations and as such, Plaintiff's motion for summary judgment should be granted.

In considering violations of the FDCPA, the Second Circuit has held that "any lender-debtor communications potentially giving rise to claims under the FDCPA…should be analyzed from the perspective of the least sophisticated consumer. *Russell v. Equifax A.R.S. and CBI Collections*, 74 F.3d 30, 34 (2d Cir. 1996). The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all customers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993). The courts must construe the statute liberally to effect the statutory purpose of eliminating abusive debt collection practices by debt collectors. *Raytman v. Jeffrey G. Lerman, P.C.*, 2018 U.S. Dist. LEXIS 180075, at *9 (S.D.N.Y. Oct. 19, 2018).

To state a claim under 15 USC §1692, a plaintiff must allege that "(1) [she] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Plaintiff has clearly and adequately met these elements.

The first three elements of Plaintiff's claim are easily met. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiff is a natural person obligated to pay Cornell University ("Cornell"). Rule 56 Statement of Undisputed Material Facts ("SUMF"), ¶ 3. Plaintiff is therefore a "consumer." *Id.*

3

In the same vein, GRC is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6), as it collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal family or household purposes on behalf of creditors using the U.S. Mail and telephone. GRC's corporate representative acknowledges that it collects debts for other legal entities. *See* SUMF, ¶ 4.

Defendant's conduct arises from the collection of a "debt" within the meaning of 15 U.S.C. §1692a(5). Under this section, "debt means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." This element is met as Defendant has attempted to collect a financial obligation allegedly owed by Plaintiff to Cornell for private student loan debt incurred for personal use. *See* SUMF, ¶ 5, 16.

As such, only the fourth element remains: whether Defendant engaged in conduct that violates the FDCPA.

Debt collectors are prohibited from making false representations in connection with the collection of a debt under §§ 1692e, 1692e(2)(B), and 1692e(10). This includes the false representation that a specific fee may be collected, when that is not the case. *Simmet v. Collection Consultants of California*, 2016 U.S. Dist. LEXIS 72809 (C.D.Ca. 2016) (representing that an unauthorized convenience fee is lawful violates §1692e); *Campbell* v. *MBI Assocs., Inc.,* 98 F. Supp. 3d 568, 583 (E.D.N.Y. 2015); *Shami v. National Enterprise Systems, Inc.,* 2010 U.S. Dist. LEXIS 99838 at *4 (E.D.N.Y. 2010)  (same).

Additionally, the language of the FDCPA is clear on the ability of a debt collector to collect extra fees or costs which are incidental to the debt incurred. A debt collector may not collect any fee or expense unless such amount is **expressly** authorized by the agreement creating

4

the debt or permitted by law. 15 U.S.C. § 1692f(1); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999). The Second Circuit has put forth a test for determining whether a fee or expense may be sought by a debt collector under the 1692f(1) of the FDCPA:

- *If state law expressly permits* such fees, a fee may be imposed even if the contract is silent on the matter;

- *If state law expressly prohibits* such fees, a fee cannot be imposed even if the contract allows it;

- *If state law neither affirmatively permits nor expressly prohibits* such fees, a fee can be imposed only if the customer expressly agrees to it in the contract.

*Id.*; *See also Campbell,* 98 F. Supp. 3d at 578; *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) ("The only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law").

The Third Circuit has clarified what is meant by the term "express" under § 1692f(1). The term "'express' means plain on the face of the document itself, as opposed to implied by other sources external to the agreement." *Fuentes v. AR Res., Inc.*, 2017 U.S. Dist. LEXIS 48923, at *32-33 (D.N.J. Mar. 31, 2017) (*citing Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 408 (3d Cir. 2000). To pass muster, there must be actual knowledge or consent by the consumer during the transaction as to the rate which is to be charged. *Pollice*, 225 F.3d at 408 (*citing Tuttle*, 120 F. 3d 9).

A. <u>Late Fees</u>

In order to determine whether the late fees sought by Defendant are legal, the *Tuttle* analysis must be conducted. New York law does not expressly prohibit or permit the collection of late fees. Accordingly, to be allowed, Ms. Francis's contract with Cornell must expressly, on the

face of the document, make clear that late fees are allowed. *Tuttle*, 190 F.3d 9, 13 (2d Cir. 1999);

*Pollice*., 225 F.3d at 408.

 The contract with Cornell has a specific section dedicated to remedies in the event of late

payment or delinquencies:

> LATE PAYMENT AND DEFAULT
>
> Late payments will not affect the ANNUAL PERCENTAGE RATE, but will increase the total FINANCE CHARGE as a result of the longer period to which the ANNUAL PERCENTAGE RATE will be applied to the unpaid balance of the amount financed. Upon default, Cornell University may accelerate repayment by declaring all or any part of the remaining indebtedness immediately due and payable without presentation, demand or notice, all of are hereby expressly waived. I promise to pay all attorney's fees and other reasonable collection costs and charges necessary for the collection of any amount not paid when due.

SUMF ¶ 9. Nowhere within this provision does the contract call for the imposition of late fees.

Accordingly, § 1692f(1) does not allow for the collection of late fees against Ms. Francis.

Similarly, despite the inability of Defendant to legally collect late fees, Defendant clearly

attempted to collect such fees from Plaintiff. SUMF, ¶ 11, 16, 17. Under Second Circuit

precedent, Defendant's attempt to collect this late fee and its false representations concerning the

fee violates §§ 1692f, 1692e, e(2), and e(10) as a matter of law.

 Not only does GRC's letter violate the FDCPA through the collection of impermissible

late fees, GRC's deceptive representations concerning these fees is also illegal. Specifically,

GRC's letter states that such fees "may vary from day to day" such that late fees will accrue and

increase the debt. SUMF, ¶ 31, 32. However, this is false as late fees will not and have not been

assessed against Plaintiff since before the loan was first placed with GRC. SUMF, ¶ 29-32.

 Conditional language which is false has repeatedly been found to violate the FDCPA. In

*Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362 (7th Cir. 2018) the collection letter stated:

6

"Because of interest, late charges, and other charges that may vary from day to day, the amount

due on the day you pay may be greater." The plaintiff's brought suit alleging the letter was false

because, under Wisconsin law, Defendant could not impose "late charges and other charges." *Id*.

at 365. Notably, the court found that while the creditors could have legally charged interest,

because neither the creditor nor collector could have charged late charges or other charges, the

letter was false and misleading in violation of the FDCPA. *Id*. at 367; *see also Heredia v. Capital*

*Mgmt. Servs., L.P.*, 2019 U.S. App. LEXIS 33444, at *8 (7th Cir. Nov. 8, 2019) (finding a letter

deceptive where the letter said a 1099-C may be sent, when it would not in fact be sent);

*Medzhidzade v. Capital Mgmt. Servs., LP*, No. 17-cv-6452 (BMC), 2018 U.S. Dist. LEXIS

73428, at *8 (E.D.N.Y. Apr. 30, 2018) (finding letter deceptive where it implied [late fees] would

accrue "where there is no evidence that it would increase in the future is misleading"); *Islam v.*

*Am. Recovery Serv*., No. 17-cv-4228 (BMC), 2017 U.S. Dist. LEXIS 180415, at *10 (E.D.N.Y.

Oct. 30, 2017) (same).

Accordingly, Defendant's letter is also deceptive for implying that late fees may vary, i.e.

accrue, when they will clearly not. Thus, Defendant's letter violates § 1692e, e(2), and e(10) on

this basis as well.

 B. <u>Collection Costs</u>

  **1. GRC's Contract With Cornell Does Not Result In "Express" Consent As Required By 15 USC § 1692f**

   a. <u>Because the contract between Plaintiff and Cornell University only allows for reasonable collection costs and charges necessary for the collection of the debt GRC's collection fee must have an association with the actual cost of collection</u>

The dispute concerning collection costs presents a different legal analysis. As with late

fees, New York law is also silent on whether a debt collector can impose collection fees.

Accordingly, Plaintiff's agreement with Cornell University governs this dispute. Plaintiff does

not dispute that the agreement expressly provides for the collection of a collection fee. The contract clearly states: "I promise to pay all attorney's fees and other reasonable collection costs and charges necessary for the collection of any amount not paid when due." SUMF, ¶ 9. However, the majority of case law addressing this issue has held that similar language only allows for actual costs of collection as opposed to a flat percentage fee having no association with the cost of collection.

The Eight Circuit supports Plaintiff's claim in *Kojetin v. C U Recovery, Inc*., 212 F.3d 1318 (8th Cir. 2000) which adopted the District Court opinion in its entirety. There, the plaintiff brought suit after the debt collector sought a flat 15% collection fee having no association with any cost of collection. *Kojetin v. C U Recovery, Inc*., 1999 U.S. Dist. LEXIS 10930, at *1 (D. Minn. Mar. 29, 1999). The underlying contract provided for the collection of fees and costs incidental to the collection of the debt. *Id*. at n. 1.  As anticipated in this case, the debt collector argued that the 15% fee amount sought did not violate the terms of the note because such amount represented the actual cost to the creditor for hiring a collection agency to collect the debt. *Id*. at *4. The court rejected this argument:

> While it is true that MMCU's costs of collection would include C.U.'s fifteen percent fee, Kojetin did not authorize MMCU to hire a collection agency on such a percentage basis. Had MMCU undertaken collection efforts on its own, it undisputedly could not have accessed a percentage fee wholly unrelated to the actual cost of its collection efforts. Nothing in the note precluded MMCU from hiring C.U. as its agent to undertake these efforts, but MMCU and C.U. cannot alter Kojetin's obligation by the terms of their independent agreement. Under the terms of the note, Kojetin is required to pay only the actual costs of the collection efforts. C.U.'s inclusion of the percentage fee amount in the notice, therefore, violated the FDCPA for the reasons set forth in the Report and Recommendation.

Both the Third and Eleventh Circuits reached the same conclusion. In *Kaymark v. Bank of Am., N.A*., 783 F.3d 168 (3d Cir. 2015) *overruled on other grounds* at *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1035 (2019), the consumer's contract allowed for collection of

8

attorney's fees incurred in connection with a default. *Id*. at 173. Upon default, the debt collector

filed a foreclosure action seeking $1,650 in attorney's fees. *Id*. At the time suit was filed

however, $1,650 of fees had not yet been performed, and therefore, these fees were not

authorized by the agreement; thus, forming a basis for a violation of §1692f(1). *Id*. at 175; *see*

*e.g. McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 243 (3d Cir. 2014) (finding

FDCPA violation where collection letter sought $650 in attorney's fees which had not yet been

incurred). In *Bradley v. Franklin Collection Serv., Inc*., 739 F.3d 606 (11th Cir. 2014), a patient,

signed an agreement with a medical practice prior to receiving treatment stating, "I agree to pay

all costs of collection." The practice had a separate agreement with the debt collector whereby the

collector would get a third of the amount collected. *Id*. at 609. The Eleventh Circuit found that

the patient's agreement with the practice "to pay all costs of collection" did not expressly

authorize the debt collector to add a 33% collection fee to his account because he agreed to pay

the actual costs of collection, and the debt collector could not demonstrate that the fee which was

assessed before the debt collector attempted to collect the balance due bore any correlation to the

actual cost of the collection effort. *Id.* at 609-10. Because there was no express agreement

between the practice and the patient allowing for the collection of a 33% fee, the fee violated

Section 1692f(1). *Id*.

Numerous district court cases have also held that fees incurred in connection with the

collection of a debt must bear relation to the actual costs incurred. In *Richard v. Oak Tree Grp.,*

*Inc.*, 614 F. Supp. 2d 814 (W.D. Mich. 2008), the underlying agreement allowed for the creditor's

"collection costs and expenses incurred due to" default. There, the court held it would take a leap

of logic to conclude that this language required the consumer to pay a collection agency's

maximum potential commission based upon a percentage of the unpaid balance, and granted

summary judgment. *Id*. at 823. In *Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi,*

9

*P.C.*, 2005 U.S. Dist. LEXIS 32404 (W.D. Mich. Sep. 8, 2005), the underlying agreement called for reasonable attorney's fees in the event of default. There too, the court found a percentage contingency having no relation to actual costs of collection warranted summary judgment for the consumer. *Id*. at *12. *Annunziato v. Collecto, Inc*., 207 F. Supp. 3d 249, 263 (E.D.N.Y. 2016); *Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349, 358 (D. Mass. 2008).

Applying the above cited cases to this case demonstrates Plaintiff is entitled to summary judgment. Here, the underlying contract provides for reasonable collection costs and charges *necessary* for the collection of any amount not paid when due. As in *Kojetan*, this language requires the collection fee sought to be incidental to the actual costs of collection, and cannot rely on a set rate. This is especially so, where that rate is the subject of contract between the creditor and collector alone. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 408 (3d Cir. 2000) (rate set without consumer consent not considered "express consent" under §1692f(1)); *Kojetin*, 1999 U.S. Dist. LEXIS 10930, at *5 n.3. Similarly, as in *Richard* and *Stolicker*, it would be illogical to allow to consider the costs and charges necessary to collect against Plaintiff to allow for the maximum potential commission of Defendant based on a percentage of the balance. Finally, as in *Kaymark*, *McLaughlin*, and *Bradley*, seeking to collect a fee which has no association with fees yet incurred is unlawful.

Accordingly, Plaintiff is entitled to summary judgment because Defendant's fee has no association to costs or charges necessary for collection of the debt.

      b.  <u>Public policy cannot allow consumers to be responsible for any and all contingency agreements made by their creditors</u>

Public policy concerns must be addressed as well. GRC is seeking collection fees which total 45%-46% of the principal debt balance, and slightly greater than 33.33% of the total balance sought. SUMF, ¶ 14-22.  The only way this Court could find that these sums are "necessary for

the costs of collection" would be to hold that contingency structures between a creditor and debt collector, which no consumer is made aware of at any time, must be imposed on debtors, as amounts *necessary* for the costs of collection. Such a holding, however, would lead to draconian results and directly contradict the clear intent of Congress in enacting the FDCPA and the liberal construction of the statute. Were a consumer subject to any fee negotiated between a debt collector and a creditor, what is to stop a debt collector from contracting for a collection fee of 80% of the debt? *Kojetin v. C U Recovery, Inc.*, 1999 U.S. Dist. LEXIS 10930, at *5 n.3 (D. Minn. Mar. 29, 1999); *Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076, 1083 (D. Minn. 2007); *Stolicker,* 2005 U.S. Dist. LEXIS 32404, at *10 (rejecting defendant's "logic which would allow [the creditor] and its collection attorney, independent of the debtor, to determine what they believed was a reasonable attorney fee and then request that amount in a suit to collect the debt"). It cannot be within the spirit of the FDCPA or public policy to allow consumers to be subject to any fee agreement the creditor enters into. In fact, Cornell subsequently placed Plaintiff's account with a different debt collector which sought much less than Defendant seeks here, clearly demonstrating that the 45%-46% fee is simply not *necessary*. SUMF, ¶ 30.  Here, the language of the contract prevents this unfair result by advising the consumer that only those costs *necessary* for the costs of collection will be sought. Necessary costs cannot be construed to mean any costs agreed to between the creditor and debt collector, to a consumer of any level of sophistication. To the contrary, under the FDCPA, the <u>consumer</u> must <u>expressly</u> agree to the fee. Section 1692f(1). While GRC and Cornell may have reached a percentage agreement, the percentage based fee was not expressly authorized by Plaintiff, and therefore remains uncollectable. *See Bradley*, 739 F.3d 606; *Kojetin,* 212 F.3d at 1318; *Pollice*, 225 F.3d at 406-408, *quoting Tuttle*, 190 F.3d 9 (for the proposition that a consumer must be actually aware of the penalty rate to be said to have "expressly consented" to such rate); *Shepherd,* 2012 U.S. Dist. LEXIS 94199, at *17.

11

## 2.   Defendant's 45% Fee Is Merely an Estimate of What May Be Due

GRC has admitted that it is only entitled to any fees after it is successful in collecting those debts. SUMF, ¶ 14-22.   Therefore, at the time the letter was sent, Defendant was not entitled to any fee whatsoever. Instead, the amount sought in the letter is merely an estimate as to what those fees may be.

Both Circuit and District Courts have found such estimates illegal. *McLaughlin,* 756 F.3d at 246  (holding that defendant violated the FDCPA by seeking fees that were merely estimates of the amounts owed, as the fees had not yet been incurred); *Pollice v. Nat'l Tax Funding, L.P*., 225 F.3d 379, 404 (3d Cir. 2000); *Stall v. First Nat'l Bank of Buhl*, 375 N.W.2d 841, 845 (Minn. Ct. App. 1985) ("Because no amounts have yet been realized on the Roberts file, Stall is not entitled to a contingent fee at this time. He will be entitled to his contingent fee if and when the bank realizes an amount on this matter."); *Aubrey v. McCabe Trotter & Beverly, P.C*., 2018 U.S. Dist. LEXIS 136878, at *13 (D.S.C. Aug. 14, 2018)(estimates of what a consumer may owe, even if ultimately permitted by the underlying agreement violates the FDCPA; *Annunziato*, 207 F. Supp. 3d at 261; *Genova v. IC Sys*., 2017 U.S. Dist. LEXIS 80046 (D.N.J. May 25. 2017); *Ardino v. Solomon & Solomon, P.C.*, 2014 U.S. Dist. LEXIS 8638 (D.N.J. Jan. 23, 2014) ("While the Ardinos agreed to pay costs incurred by HESAA, they did not agree to pay—and Solomon had no basis to demand—a prospective or estimated fee"); *Hernandez v. Miracle Fin., Inc*., 2011 U.S. Dist. LEXIS 144356 at *4 (D.N.J. Dec. 13, 2011) (finding that a debtor stated a plausible Section 1692e claim against a debt collector for including a flat collection fee in a communication to the debtor without indicating that the fee was contingent upon the successful collection of the debt); *Gathuru v. Credit Control Servs*., 623 F. Supp. 2d 113, 120 (D. Mass. 2009); *Som v. Daniels Law Offices, P.C*., 573 F. Supp. 2d 349 (D. Mass. 2008); *Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076, 1083 (D. Minn. 2007).

12

The importance of the fact that the fee is only an estimate is best explained in hypotheticals concerning what options the consumer has when receiving GRC's letter. Defendant has admitted that Cornell allows for negotiation of its debts. SUMF, ¶27, 28. Accordingly, where GRC sends a letter seeking for example a total fee of $1,450 broken down into $1,000 in principal and $450 in collection fees, the consumer has four options: (1) pay in full, in which case GRC's collection fee will indeed be the $450 after payment is made; (2) negotiate a discount on the principle, e.g. a 50% discount. In this case, the consumer pays $500 in principle, and the collection fee of $450. Here, because GRC gets 33.33% from Cornell of the amount collected, GRC's collection fee will only be $316.64. Thus, representing $450 as the collection fee is false; (3) negotiate both the principal and collection fee, e.g. a 50% discount. In this case, the consumer pays $500 in principle, and $225 in fees, and GRC receives a fee of $241.64. Thus, representing $450 as the collection fee is false; (4) another option is for the consumer not to pay the debt. In this case, the collection fee will actually be zero _or_ the debt may be passed to another collection agency, which will seek a lesser collection fee—as happened in Plaintiff's case. SUMF, ¶ 29-30.

These four scenarios demonstrate an item of significant importance: out of the four possible scenarios, only one scenario will the collection fees actually equal the exact amount being sought from the least sophisticated consumer. Accordingly, Defendant's collection fee is false and deceptive for 75% of the possibilities at all times. For the full payment scenario, the fee is still false because it was not owed at the time the letter was sent and it was therefore false, deceptive and misleading represent that it was then owed.

The possible scenarios also demonstrates another problem with providing an estimate as to the collection fee. The least sophisticated consumer is never made aware that the fee is an estimate; each letter represents that the fee is precise and currently owed. SUMF, ¶ 17-22. Accordingly, while the consumer may attempt to negotiate the debt, the premise which the

13

consumer is starting with is negotiation from a fee which is only an estimate. This type of deception is not only false and misleading in a general sense, it literally puts the consumer at a complete disadvantage when attempting to negotiate his or her debt because the negotiation is starting from an amount greater than truly owed (for 75% of the possible scenarios). Thus, by representing its estimates as precise amounts owed, Defendant engaged in false, deceptive, and misleading conduct. Had Plaintiff's contract with Cornell been clear as to the exact calculation of its collection fee and when it was due, Defendant's representations may not have been false. Alternatively, had Defendant explained that its collection fee was tied to the percentage of debt paid, Defendant's representations would not have been false. Instead, Defendant chose to profit from keeping the least sophisticated consumer in the dark—the exact type of conduct contemplated by the FDCPA as false, deceptive and misleading.

### 3.  GRC's 45%-and-Rising Collection Cost is Not "Reasonable"

While the underlying contract permits the assessment of reasonable collection costs, Defendant's 45%-46% of principal in collection costs cannot be considered reasonable. If unreasonable fees are being assessed, than GRC cannot seek its fees by relying on the underlying contract. Accordingly, by seeking an unreasonable fee, as contemplated by the parties, Defendant's fee violates §§ 1692f(1), 1692e, e(2), and e(10).

A contract must be interpreted to give effect to the intent of the parties. *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd*., 930 F.2d 1021, 1025 (2d Cir. 1991). If the language of the contract is unambiguous, then the parties' intent is discerned from the four corners of the contract itself. *Nicholas Laboratories, Ltd. v. Almay, Inc*., 900 F.2d 19, 21 (2d Cir. 1990). A contract is considered ambiguous if reasonable minds could differ as to its meaning. *See McCarthy v. Am. Int'l Grp., Inc*., 283 F.3d 121, 127 (2d Cir. 2002). "As a general matter, when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is

14

inappropriate." *Mellon Bank, N.A. v. United Bank Corp*., 31 F.3d 113 116 (2d Cir. 1994). However, "for the parties' intent to become an issue of fact . . . , there must also exist relevant extrinsic evidence of the parties' actual intent." *Id.*

The contract between Plaintiff and Cornell concerning the collection of "reasonable" collection costs should not be considered ambiguous. No consumer of any level of sophistication would believe that a failure to pay his or her student loan debt would or could result in a collection fee *starting* at 45% of the principal. Such a "cost" is exorbitant and well beyond what reasonable consumers may disagree on as to what is reasonable. Even further, reasonable minds cannot differ as to whether a "reasonable collection cost" contemplates the collection cost consistently increasing for no other reason than the fact that interest is accruing. Such a rise could result in the collection cost rising over time to 100% of the principal. Notably, the contracts at issue in this case are education loans. Consumer debtors cannot be said to believe that the collection costs could amount to 45% and rising when contracting directly with their colleges, as these are not the types of lenders that any consumer would expect such an exorbitant fee from.

Here, Defendant's fee is unreasonable because of its high percentage and its endless ability to rise based on nothing other than interest accrual. Reasonable minds cannot differ that the contractual language does not allow such rates. Accordingly, Plaintiff should be granted summary judgment on this basis.

### 4. GRC's Collection Fee Is An Overcalculation Because It Includes Unlawful Late Fees

Defendant calculates its collection fee by adding principal, late fees, and interest, and then multiplying those fees by a set percentage. SUMF, ¶ 18. As discussed above, the underlying contract with Cornell does not provide for the accrual of late fees. Accordingly, the collection fee

15

which includes late fees, is always an amount greater than allowed by law in violation of §§ 1692f(1), 1692e, e(2), and e(10).

### 5. Defendant's Fee Is an Overcalculation Because It Seeks a Greater Amount than Allowed by Contract with Cornell

Even were this Court to allow a fee negotiated between Cornell and GRC, with no relation to the work conducted, the amount sought by GRC is still illegal. This is so because GRC charges an amount greater than that allowed under the contract between GRC and Cornell. The contract between GRC and Cornell is abundantly clear: GRC's cut is 33.33% of the complete recovery. SUMF, ¶ 14. However, when applying this percentage to the principal, interest, and late fee sought, it appears that the collection fee applied to Ms. Francis's debt is in fact greater than 33.33%, resting at 33.3333333%. SUMF, ¶ 15.

The discrepancy was addressed during GRC's deposition.[1] GRC's corporate representative testified that the reason its collection fee is greater than the 33.33% is because GRC's collection software is programed to seek 33.3333333% from Ms. Francis. SUMF, ¶15. Where the contract is specific down to two decimal places, there can be no dispute that GRC simply cannot add anything more than that called for in the contract. § 1692f(1). The fact that GRC's computer system is programmed to calculate a percentage greater than that allowed by contract, is a clear violation of the FDCPA.

Practically speaking, in Ms. Francis's case, the discrepancy is not a significant amount. However, the FDCPA, a liberally construed strict liability statute, does not provide for the defense that because the amount illegally sought is small, a debt collector can get away with it. In fact allowing such an argument would require the Court to hold that it is okay to violate the plain

---

[1] For Defendant's May letter, the principal, interest and collection balance combined is $5,026.19. Taking 33.33% of this amount yields $1,675.23. However, Defendant actually sought a fee of $1,675.40. This is 45% of Plaintiff's principal amount. Defendant reached this number by multiplying $5,026.19 by 33.333333333%. SUMF, ¶ 15.

language of the Act as long as it only hurts the consumer by a few pennies. This would lead to a slippery slope where a debt collector may charge an additional 10 cents, but not an additional 20 cents, leading to absurd results.

While the fee increase is small, the nature of this case as a class action with a sizeable debt collector also supports Plaintiff's position. Viewing GRC's small fee increase from the perspective of its total collections yields thousands of dollars extra in extra profit for GRC by skirting the FDCPA and taking only a sliver of a percent from each of thousands of consumers that it attempts to collect from. Given this, GRC must be held accountable for profiting off illegal charges to the detriment of consumer debtors.

Finally, even if the Court were to hold that GRC's 45%-and-rising collection fee is both reasonable and necessary for the costs of collection, GRC's 0.003333333% increase cannot be considered reasonable or necessary as required by the contract. After all, the fee charged is even greater than the fee it contracted with Cornell. Thus, even if the Court were to hold that a debt collector is allowed to violate §§ 1692f(1), 1692e, e(2), and e(10) so long as it is a small amount, the ultimate basis for charging a collection fee in the first instance cannot logically extend to allow for a fee that is anything greater than the agreement with Plaintiff's creditor.

Accordingly, Plaintiff should be granted summary judgment on this basis as well.

**V.     CONCLUSION**

GRC's collection attempts violate multiple provisions of the FDCPA in many ways. First, it seeks late fees which it cannot. Second, it implies late fees are accruing while they are not. Third, its collection fees are based solely on an agreement made between Cornell University and GRC, without Plaintiff's knowledge or consent, and have no relation to any work actually conducted by GRC. Fourth, Plaintiff never consented to a 45%-and-rising collection fee, an

amount which is simply not reasonable. Fifth, Defendant's fee is clearly an estimate of what may be owed, but it is nonetheless represented to the consumer as a definite amount due and owing. Finally, GRC's attempt to squeeze just a bit more out of each consumer by adding seven decimal places to the amount contracted for with Cornell University is completely unlawful. Accordingly, Summary Judgment should be granted to Plaintiff under §§ 1692f(1), 1692e, e(2), and e(10).


Date: February 27, 2020

Respectfully submitted,

/s/ Daniel Zemel

Daniel Zemel, Esq.
ZEMEL LAW LLC
1373 Broad Street, Suite 203-C
Clifton, New Jersey 07013
T: 862-227-3106
DZ@zemellawllc.com


**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of February 2020 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.


/s/ Daniel Zemel
Daniel Zemel, Esq.

18