**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASMIN R. FRANCIS, individually, and on behalf of all other similarly situated consumers,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL REVENUE CORPORATION,<br><br>Defendant. | Case No.: 1:18-cv-06955-BMC |

**DEFENDANT GENERAL REVENUE CORPORATION'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Philip A. Goldstein
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York NY 10020
(212) 548-2167

Sarah A. Zielinski (*Pro Hac Vice*)
Amy Starinieri Gilbert (*Pro Hac Vice*)
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 849-8100
*szielinski@mcguirewoods.com*
*agilbert@mcguirewoods.com*

*Counsel for Defendant General Revenue Corporation*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

LEGAL STANDARD............................................................................................ 5

ARGUMENT ........................................................................................................ 6

I.     Plaintiff's FDCPA Claim Related to Late Fees Fails ...................................... 6

      A.    The Promissory Note Between Cornell and Plaintiff Provided For Late
            Fees ............................................................................................................ 6

      B.    GRC Is Not Liable Under the FDCPA For Sending a Collection Letter
            That Accurately Stated the Late Fees Assessed by Cornell................................ 7

II.    Plaintiff's FDCPA Claim Related to Collection Costs Fails ............................. 8

      A.    The Collection Costs Sought By GRC Were Reasonable ..................... 9

            i.      Collection Costs Assessed as a Percentage of the Balance Owed is
                   Reasonable and Consistent with Industry Practice ..................... 9

            ii.     Collection Costs Assessed as 25% of All Payments Made or as
                  33⅓% of the Balance Owed Is Reasonable ............................... 11

            iii.    Collection Costs Need Not Reflect GRC's Actual Costs of
                  Collection to be Reasonable........................................................ 12

            iv.    The Promissory Note Does Not Require That Collection Costs Are
                  "Necessary"................................................................................. 14

      B.    GRC Accurately Informed Plaintiff of the Collection Costs Owed ................... 15

      C.    The Collection Costs Were Properly Calculated ................................. 15

CONCLUSION.................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annunziato v. Collecto, Inc.*,
  207 F. Supp. 3d 249 (E.D.N.Y. 2016) ...................................................................13

*Bernal v. NRA Grp., LLC*,
  2017 WL 4948544 (N.D. Ill. Nov. 1, 2017) ...........................................................12

*Black v. Educ. Credit Mgmt. Corp.*,
  459 F.3d 796 (7th Cir. 2006) .................................................................................14

*Bradley v. Franklin Collection Serv., Inc.*,
  739 F.3d 606 (11th Cir. 2014) ...............................................................................13

*Donaeva v. Client Servs., Inc.*,
  No. 18-CV-6595 (BMC), 2019 WL 3067108 (E.D.N.Y. July 12, 2019) .................2

*Fields v. Wilber Law Firm, P.C.*,
  383 F.3d 562 (7th Cir. 2004) ...................................................................................8

*Gathuru v. Credit Control Servs., Inc.*,
  623 F. Supp. 2d 113 (D. Mass. 2009) .............................................................10, 11

*George W. v. U.S. Dep't of Educ.*,
  149 F. Supp. 2d 1195 (E.D. Cal. 2000)....................................................................9

*Helman v. Bank of Am.*,
  685 F. App'x 723 (11th Cir. 2017) ...........................................................................5

*India.Com, Inc. v. Dalal*,
  412 F.3d 315 (2d Cir. 2005).....................................................................................7

*Kojetin v. CU Recovery*,
  212 F.3d 1318 (8th Cir. 2000) ...............................................................................13

*Ocampo v. Client Servs., Inc.*,
  No. 18-CV-4326 (BMC), 2019 WL 2881422 (E.D.N.Y. July 3, 2019) ...............2, 4

*United States v. Washington*,
  No. 08-CV-5083 (ENV), 2009 WL 6636862 (E.D.N.Y. Dec. 14, 2009) ..........11, 14

*Zelner v. ATG Credit, LLC*,
  No. 17 C 8007, 2019 WL 556737 (N.D. Ill. Feb. 12, 2019)...................................13

**Statutes**

Fair Debt Collection Practices Act 15 U.S.C. §§ 1692 *et. al.*................................................. *passim*

31 U.S.C. §§ 3717(e) and 3718..............................................................................................9

**Other Authorities**

34 C.F.R. § 674.45(e)(1)(i) and (ii) ......................................................................................12

52 F.R. 45552-01 .............................................................................................................10, 11

Merriam Webster Dictionary, definition of "Charge" available at
https://www.merriam-webster.com/dictionary/charge ..........................................................7

Merriam Webster Dictionary, definition of "Cost" available at
https://www.merriam-webster.com/dictionary/cost...............................................................7

Merriam Webster Dictionary, definition of "Late" available at
https://www.merriam-webster.com/dictionary/late ...............................................................6

General Revenue Corporation ("GRC"), by and through its attorneys, submits this memorandum in support of its Motion for Summary Judgment, and states as follows:

## INTRODUCTION

When Plaintiff borrowed money from Cornell University ("Cornell") to help fund her education, she agreed to pay Cornell late fees and, in the event of a default, reasonable collection costs.  *See* GRC's Statement of Undisputed Facts ("SF") ¶¶ 1–11; *see also* Declaration of Philip Goldstein ("PG Decl.") Exhibit 1, Master Promissory Note, at p. 1 ("Late Payments and Default"), Exhibit 2, Cornell University Exit Interview, at GRC_FRANCIS_000008-09, and Exhibit 3, Deposition of Plaintiff Jasmin Francis, at 15:5-16:17.  When Plaintiff did default, Cornell placed Plaintiff's account with GRC for collection, and GRC sent Plaintiff a collection letter dated May 31, 2018, accurately itemizing the debt owed, including the principal ($3,729.21), interest ($1,292.58), late fees ($18.34), and collection costs ($1,680.04).  *Id.* ¶¶ 12–13, 37; *see also* PG Decl. 3 at 17:6-18:10; Declaration of Zenon Butts ("Butts Decl."), ¶ 6.

In response, Plaintiff brought this class action lawsuit under the Fair Debt Collection Practices Act ("FDCPA") alleging that GRC's letter violates the FDCPA because she never agreed to pay late fees, and that the collection costs assessed were not reasonable.  But Plaintiff's initial concern with GRC's letter had nothing to do with late fees or collection costs.  *Id.* ¶¶ 40–42; *see also* PG Decl. Ex. 3.[1]   In fact, Plaintiff never contacted GRC or Cornell to discuss what she owed on her account.  *Id.*  Instead, Plaintiff was concerned that her unpaid student loan was appearing on her credit report.  *Id.*  It was only upon being referred by a credit repair agent that Plaintiff got in touch with her counsel, who concocted this FDCPA suit.  *Id.*  Not only does the undisputed

---

[1] PG Decl. Ex 3 at 24:13-29:24, 34:3-35:13, 56:2-23, 59:7-60:20, 63:5-64:5, 65:22-69:6, 70:13-71:11, 72:4-24, 74:4-75:2.

1

evidence show that the FDCPA claim is wholly without merit, but this is precisely the type of lawyer-driven dispute that this Court discourages.  *See Ocampo v. Client Servs., Inc.*, No. 18-CV-4326 (BMC), 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019) ("this is a lawyer's case, by which I mean that it alleges a defect of which only a sophisticated lawyer, not the least sophisticated consumer, would conceive"); *see also Donaeva v. Client Servs., Inc.*, No. 18-CV-6595 (BMC), 2019 WL 3067108, at *4 (E.D.N.Y. July 12, 2019) (same).

## <u>BACKGROUND</u>

In October 2010, Plaintiff borrowed money from Cornell to help fund her education. SF ¶ 1; PG Decl. Ex 1.  Plaintiff signed a Master Promissory Note setting forth the terms of the loan agreement for Plaintiff's institutional Shoemaker Loan (the "Promissory Note").  *Id.* ¶¶ 2–3; PG Decl. Ex. 3 at 15:5-16:17.   Under a provision titled "Late Payment and Default," the Promissory Note provided that Plaintiff agreed to pay attorneys' fees, reasonable collection costs, and charges necessary for the collection of any amount not paid when due.  *Id.* ¶ 4; PG Decl. Ex. 1.  Before Plaintiff graduated from Cornell in December 2011, Plaintiff participated in an exit interview to ensure that she understood the terms of the Promissory Note.  *Id.* ¶¶ 5–7; PG Decl. Ex. 2.  As part of the exit interview, Plaintiff signed a document affirmatively acknowledging that she understood the Promissory Note to mean that she would be responsible for collection costs, and "charged late fees or penalty charges for each month" she failed to make a payment in accordance with the Promissory Note.  *Id.* ¶¶ 6, 8–11; *see also* PG. Decl. Ex. 2 at GRC_FRANCIS_000008-11; PG Decl. Ex. 3 at 81:22-83:6.

Plaintiff ultimately defaulted on her loan, and Cornell referred Plaintiff's account to GRC for collection.  *Id.* ¶¶ 12–13; *see also* PG Decl. Ex. 3 at 17:6-18:10; Butts Decl., ¶ 6.  Upon placement, Cornell provided GRC a breakdown of the amount owed, including principal, interest,

and late fees.  *Id.* ¶ 16; *see also* Butts Decl. ¶ 6.  Then, GRC used that information to calculate

collection costs—i.e., the amount Cornell owes to GRC for collecting on the account.  *Id.* ¶¶ 17–

18; *see also* Butts Decl. ¶¶ 10–11. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████  *Id.*

¶ 21; Butts Decl. ¶ 7; *see also* Contract for Collection Services between GRC and Cornell PG Decl.

Ex. 4, Section V. ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  *Id.* ¶ 24; PG Decl. Ex. 4, Section

V; *see also* Butts Decl. ¶ 8.  Plaintiff's account was a second referral institutional loan.  *Id.* ¶ 25;

Butts Decl. ¶ 8. ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████  *Id.*

¶¶ 26–29; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶¶ 11–12, 14.  Cornell's contracts with its

borrowers require the borrowers to pay Cornell's collection costs, and Cornell has directed GRC

to pass on Cornell's collection costs to the borrower when collecting on the account.  *Id.* ¶ 22;

Butts Decl. ¶ 10.  Accordingly, once GRC calculates the fees Cornell owes to GRC for collecting

on the account, those costs are added to the borrower's total balance.  *Id.* ¶ 23; Butts Decl. ¶ 10.

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████  *Id.* ¶ 28; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶¶ 11–12. █████████

████████████████████████████████████  *Id.* ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

[REDACTED] *Id.* ¶ 29; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶¶ 11–12.  In Plaintiff's case, for example, the total amount Plaintiff owed as of May 31, 2018, including principal, interest, and late fees, was $5,040.13.  *Id.* ¶ 34; *see also* Letters from GRC to Plaintiff, PG Decl. Ex. 5. [REDACTED]

[REDACTED] *Id.* ¶ 36; Butts Decl. ¶ 12. [REDACTED] *Id.*

[REDACTED]

[REDACTED] *Id.* ¶ 37; Butts Decl. ¶ 12.

[REDACTED] *Id.* ¶¶ 19–20; *see also* PG Decl. Ex. 4, Section V; Butts Decl. ¶¶ 13–14. [REDACTED]

[REDACTED]

[REDACTED] *Id.* ¶ 26; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶ 14.[2]

In Plaintiff's case, GRC sent Plaintiff six letters, each of which accurately stated the principal balance owed, interest, late fees, and collection costs. *Id.* ¶¶ 38–39; PG Decl. Ex. 5; Butts Decl. ¶ 10.  Plaintiff never contacted Cornell or GRC about *any* concerns related to the letters she received from GRC.  *Id.* ¶ 41; PG Decl. Ex. 3.[3]  At some point, however, Plaintiff became concerned that the Cornell loan was negatively impacting her credit score, and hired a credit repair agent to assist her.  *Id.* ¶ 42; PG Decl. Ex. 3 at 24:13-29:24.  It was not until the credit repair agency

---

[2] [REDACTED] SF [REDACTED] ¶ 30. [REDACTED] *Id.* ¶ 31. [REDACTED] *Id.* ¶ 32. [REDACTED] *Id.* ¶ 33.

[3] PG Decl. Ex. 3 at 34:3-35:13, 56:2-23, 59:7-60:20, 63:5-64:5, 65:22-69:6, 70:13-71:11, 72:4-24, 74:4-75:2.

4

referred her to her attorney that she turned her attention to the letters sent by GRC.  *Id.* ¶¶ 42–43; PG Decl. Ex. 3 at 24:13-29:24.  After being referred to her attorney, Plaintiff filed a putative class action suit against GRC alleging that the late fees and collection costs it sought to collect from Plaintiff violate Sections 1692(e) and (f) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, because (1) the Promissory Note does not provide for late fees, and (2) the collection costs assessed are unreasonable.  *See* Second Amended Complaint ("SAC") Dkt. 35 ¶¶ 9–14.  These claims fail, however, because the Promissory Note does, in fact, provide for late fees and because the collection costs assessed here are reasonable and properly calculated.  For the reasons set forth in more detail below, GRC is entitled to summary judgment.

## LEGAL STANDARD

A "court may grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Ocampo v. Client Servs., Inc.*, No. 18-CV-4326 (BMC), 2019 WL 2881422, at *1 (E.D.N.Y. July 3, 2019) (internal quotations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find the nonmoving party, there is no genuine issue for trial."  *Id.*

"In an FDCPA case, the collection letter must be assessed from the perspective of the 'least sophisticated consumer.'"  *Id.* at *2.  The least sophisticated consumer is "neither irrational nor a dolt," and "possesses reasonable knowledge of her account's history."  *Id.*  "The least sophisticated consumer does not read a debt collection letter in complete isolation from her financial history."  *Id.* (citing *Helman v. Bank of Am.*, 685 F. App'x 723, 782 (11th Cir. 2017) (holding that the "least sophisticated consumer in plaintiff's position necessarily would have had at least certain knowledge of her financial history).  Therefore, the Second Circuit has "directed that courts should apply the standard in a manner that protects debt collectors against liability for unreasonable

misinterpretations of collection notices." *Id*. (internal quotations omitted).

## ARGUMENT

I.   **Plaintiff's FDCPA Claim Related to Late Fees Fails.**

   A.   **The Promissory Note Between Cornell and Plaintiff Provided For Late Fees.**

Plaintiff's claim that GRC violated Sections 1692e and 1692f of the FDCPA by seeking to collect $18.34 in late fees fails because the Promissory Note between Plaintiff and Cornell explicitly provides for late fees.  Under Section 1692f of the FDCPA, it is permissible to charge penalties or late fees as long as they are authorized by the contract creating the debt, or by law.  15 U.S.C. § 1692f(1).  Here, the contract creating the debt is Plaintiff's Promissory Note with Cornell. The Promissory Note states, in a provision titled "Late Payment and Default": "I promise to pay all attorney's fees and other reasonable collection costs and charges necessary for the collection of any amount not paid when due."  SF ¶ 4.  By agreeing to this provision, Plaintiff promised to pay three distinct items: (1) attorneys' fees, (2) reasonable collection costs, and (3) charges for "any amount not paid when due."  The third item, a charge for "any amount not paid when due" is, by its plain language, a late fee.  *See* Merriam-Dictionary definition of "late" available at https://www.merriam-webster.com/dictionary/late ("coming or remaining after the due, usual, or proper time; of, relating to, or imposed because of tardiness").  Moreover, this provision of the Promissory Note is titled "Late Payment and Default," indicating that it is setting forth the consequences not only for defaulting on a loan (at which point collection costs and attorney's fees may be incurred), but also for late payments.  Thus, the Promissory Note allowed Cornell to charge late fees and Plaintiff agreed to pay them.

Although Plaintiff contends that the Promissory Note provides only for collection costs and not late fees, Plaintiff's interpretation does not withstand scrutiny.  Presumably, Plaintiff reads the provision "reasonable collection costs and charges necessary for the collection of any amount

not paid when due" as listing only one item—collection costs.  Under New York law, however, "effect and meaning must be given to every term of [a] contract[.]" *India.Com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005).  Plaintiff's interpretation fails to give meaning to both terms in that provision—i.e., costs *and* charges.  Charges are distinct from costs: a charge implies a penalty, while a cost is an amount incurred to the creditor to collect on the unpaid amount.  *See* Merriam-Dictionary definition of "charge" available at https://www.merriam-webster.com/dictionary/charge ("to impose a financial burden on"); *see also* Merriam-Dictionary definition of "charge" available at https://www.merriam-webster.com/dictionary/cost ("the outlay or expenditure (as of effort or sacrifice) made to achieve an object").  It would be unnecessary to list both costs and charges if they were not distinct items.  Therefore, the Promissory Note distinctly provides for reasonable collection costs *and* late fees.

Moreover, in her exit interview, Plaintiff confirmed that she understood the Promissory Note to provide for late fees.  Prior to graduating in December 2011, Plaintiff participated in an exit interview to confirm that she understood the terms of the Promissory Note.  SF ¶ 5; PG Decl. Ex. 2.  During the exit interview, Plaintiff reviewed and signed a document affirmatively acknowledging that she understood the Promissory Note to mean that she would be "charged late fees or penalty charges for each month" she failed to make a payment in accordance with the Promissory Note.  *Id.* ¶¶ 6–8, 10–11; PG Decl. Ex. 2 at GRC_FRANCIS_000008–11.  Plaintiff's acknowledgement confirms that the Promissory Note provided for late fees.

### B.  GRC Is Not Liable Under the FDCPA For Sending a Collection Letter That Accurately Stated the Late Fees Assessed by Cornell.

The $18.34 in late fees that form the basis of Plaintiff's FDCPA claim were assessed by Cornell against Plaintiff *before* Cornell placed Plaintiff's account with GRC for collection.  SF ¶ 13; Butts Decl. ¶ 13. Accordingly, if Plaintiff had concerns about whether those late fees were

proper, she should have taken up those concerns with Cornell.  Instead, she filed this FDCPA lawsuit against GRC.  But GRC acted in accordance with the FDCPA by accurately reporting to Plaintiff that she owed late fees to Cornell.  When Cornell placed Plaintiff's account with GRC for collection, it provided a breakdown of the amount Plaintiff owed, including late fees.  *Id.* ¶ 16; Butts Decl. ¶ 6.  As of May 31, 2018, Plaintiff owed $18.34 in late fees.  *Id.* ¶ 35; PG Decl. Ex. 5.

*Id.* ¶ 22; Butts Decl. ¶ 10.  Under the FDCPA, GRC was also required to accurately report all components of that debt in seeking to collect Plaintiff's account.  *See* 15 U.S.C. § 1692e (prohibiting the false representation of the amount of the debt owed).  GRC accurately itemized those fees as part of the balance owed to Cornell in each of the collection letters it sent to Plaintiff.  If GRC had *not* included late fees in the itemization of the amount Plaintiff owed, it would have risked violating the FDCPA. *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) ("It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assesses the validity of the debt.  One simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt.").  Accordingly, GRC's efforts to collect $18.34 in late fees assessed by Cornell complied with the FDCPA.

## II.   Plaintiff's FDCPA Claim Related to Collection Costs Fails.

Plaintiff's FDCPA claims regarding collection costs likewise fail.  First, the Promissory Note provided for reasonable collection costs, and the collection costs sought by GRC were reasonable.  Second, GRC accurately informed Plaintiff of the collection costs owed.  Third, the collection costs sought by GRC were properly calculated.

### A.  The Collection Costs Sought By GRC Were Reasonable.

The FDCPA permits assessing collection costs as long as they are authorized by the contract creating the debt, which here is Plaintiff's Promissory Note.  15 U.S.C. § 1692f(1).  The Promissory Note explicitly provides: "I promise to pay all…reasonable collection costs."  SF ¶ 4; PG Decl. Ex. 1.  Plaintiff concedes that she signed this document and agreed to its terms.  *Id.* ¶ 3; PG Decl. Ex. 3 at 15:5-16:17.

SF ¶¶ 27, 36; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶¶ 12, 14.  Contrary to Plaintiff's assertion, these collection costs were reasonable.  First, collection costs assessed as a percentage of the total balance owed, including principal, interest, and late fees, is typical in the context of both private and federal loans when the borrower defaults. Second, there is no authority—and Plaintiff points to none—that assessing collections in the amount here is unreasonable.  Third, the Promissory Note provides for reasonable collection costs and *not* GRC's actual cost of collection. Finally, the Promissory Note does not require that the collection costs are "necessary."  As such, GRC assessed reasonable collection costs in accordance with the Promissory Note and did not violate the FDCPA.

### i.  Collection Costs Assessed as a Percentage of the Balance Owed is Reasonable and Consistent with Industry Practice.

It is well-settled that creditors may assess collection costs if a borrower defaults and the account is placed with a with a collection agency.  *George W. v. U.S. Dep't of Educ.*, 149 F. Supp. 2d 1195, 1208 (E.D. Cal. 2000) ("[C]ollection fees are universally charged by private lenders who make and collect student loans.  Collection of defaulted loans, and the concomitant imposition of collection fees or costs…is commercial conduct related to debt enforcement, whether the creditor is private or public.").  Assessing collection costs as a percentage of the total balance owed is

reasonable because it is consistent with industry practice.  Indeed, the "costs of collection might be paid in any number of ways; the more likely contractual arrangements are an hourly rate, a flat rate, or a *percentage-based rate*."  *Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 2d 113, 119 (D. Mass. 2009) (emphasis added).  In dispelling the notion that percentage-based collection costs are improper, the *Gathuru* court explained, "All of these [collection fee arrangements] would fall within the term 'collection costs,' and there is no obvious reason why one should be permitted and another banned."  *Id.*  The court further noted that none of the collection costs arrangements "are against public policy," and "Congress could easily have prohibited one or more forms of collection fee arrangements" but "it chose not to do so."  *Id.*  Moreover, percentage-based fees have "the virtues of providing an incentive to the debt collector to pursue cases most likely to result in repayment, and therefore arguably maximizing efficiency."  *Id*.  Not to mention, as the *Gathuru* court noted, "such an arrangement is a prominent feature in other contexts—most notably the legal profession."  *Id.*

Percentage-based collection costs are also typical in the context of federal loans.  For example, the Rules and Regulations set forth by the Department of Education regarding the Perkins loan program explicitly state that "[f]ederal law specifically authorizes Federal agencies to use collection contractors to collect their debts, and to impose on delinquent debtors the costs of collecting those debts."  *See* 52 F.R. 45552-01 (citing 31 U.S.C. §§ 3717(e) and 3718).  The Rules and Regulations go on to state that "Congress clearly understood that these contractors would be paid on a contingent fee basis" and "to charge debtors with the costs of collecting delinquent accounts, including the cost of using a private debt collection contractor."  *Id*. (internal quotations and citations omitted).  The Rules and Regulations explain that the Secretary of Education considers the full amount of contingent fees to be "reasonable" collection costs because the

contingent fee arrangement secures collection firms' services, which provide added staff and expertise that many institutions lack, and because the fee arrangements were the result of a competitive selection process.  *See* 52 F.R. 45552-01; *see also United States v. Washington*, No. 08-CV-5083 (ENV), 2009 WL 6636862, at *5 (E.D.N.Y. Dec. 14, 2009) (citing same rationale for contingent fee arrangements).   The Secretary of Education also found contingency fee arrangements reasonable given the stage of delinquency and the fact that the debtor has had a reasonable opportunity to resolve the debt.  *Id.*  The fact that federal law explicitly permits federal entities to enlist private agencies for collections services and to pay them a contingent fee for their services confirms that the percentage-based collection costs do not violate the FDCPA.

    ii.  **Collection Costs Assessed as**                               **Is Reasonable.**

Plaintiff's claim that the collection costs are "excessive" similarly fails. SAC ¶ 10.

SF ¶ 27; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶ 14.   Plaintiff has put forth zero evidence that assessing collection costs as

, is unreasonable.[4]  As discussed above, assessing collection costs as a percentage-based fee is permissible under the FDCPA, and Congress has not put any cap on percentage collection fees.   Indeed, as the *Gathuru* court explained, "Congress could easily

---

[4] Plaintiff's allegation that the collection costs sought here exceeded 45% of the underlying debt is incorrect.  SAC ¶ 10.  The total debt owed as of May 31, 2018, less collection costs, is $5,040.13 (principal, interest, late fees). SF ¶ 34; PG Decl. Ex. 5.

*Id.* ¶ 37; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶ 12.  In any event, even if Plaintiff were correct that the collection costs exceeded 45% of the total balance owed, she has presented no evidence that such a percentage-based fee is unreasonable in violation of the FDCPA.

have…capped percentage fees, or required that all such arrangements be 'reasonable'"—but it "chose not to do so." *Gathuru*, 623 F. Supp. 2d at 119.  Moreover, the fact that federal regulations for certain federal loans permit contingent fee arrangements, and allow collection costs of up to 40% of the total balance owed, supports that collection costs assessed as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, is reasonable.  *See* 34 C.F.R. § 674.45(e)(1)(i) and (ii) (assessing collection costs for Perkins loans as 30% of principal, interest, and late charges for first collection efforts, and 40% of principal, interest, and late charges for subsequent efforts).

### iii.  Collection Costs Need Not Reflect GRC's *Actual* Costs of Collection to be Reasonable.

Contrary to Plaintiff's assertion, collection costs need not be tied to *actual* costs of collection incurred by *GRC* to be reasonable.  SAC ¶ 11.  As an initial matter, the collection costs assessed by GRC *do* reflect *Cornell's* actual costs of collection. SF ¶¶ 18, 22–23, 27; PG Decl. Ex. 4, Section V; Butts Decl. ¶¶ 10, 14; *see also Bernal v. NRA Grp., LLC*, 2017 WL 4948544, at *2 (N.D. Ill. Nov. 1, 2017) (regardless how collection costs are calculated—whether debt collector charges creditor a "percentage of the principal amount owed" or a "flat fee or cost-plus fee"—"it is a cost that [the creditor]…incurred in collecting the debt").  As noted above, Plaintiff's Promissory Note provides for reasonable collection costs, and the collection costs Cornell incurs are the fees it pays to GRC.  SF ¶¶ 4, 18, 21; PG Decl. Ex. 1; PG Decl. Ex. 4, Section V; Butts Decl. ¶¶ 7, 10.  The collection costs assessed to Plaintiff were exactly the fees Cornell must pay to GRC to collect on Plaintiff's account. *Id.* ¶¶ 36–37; PG Decl. Ex. 4, Section V.D; Butts Decl. ¶ 12.

In *Bernal*, the court expressly rejected the argument that collection costs were limited to the costs incurred by the debt collector, and instead found that just as the creditor would be entitled to reasonable attorneys' fees if it had hired a lawyer to pursue the debt, it likewise was entitled to recover the cost of hiring a debt collector.  *Id.* at **1–2.

Although Plaintiff may rely upon caselaw where courts limited collection costs to the actual costs of collection, courts to reach that result did so only because the contract creating the debt specifically provided that the borrower would pay the actual costs of collection—not, as is the case here, "reasonable collection costs." *See, e.g.*, *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609 (11th Cir. 2014)[5] (finding percentage-based collection fee violated the FDCPA only because the underlying contract provided that the borrower would pay "all costs of collection"— i.e., actual costs of collection); *Kojetin v. CU Recovery,* 212 F.3d 1318 (8th Cir. 2000) (finding collection fee based on a percentage rather than actual costs violated the FDCPA only because the "agreement provided that [the borrower] was liable only for 'actual costs'"); *Annunziato v. Collecto, Inc.*, 207 F. Supp. 3d 249, 265 (E.D.N.Y. 2016) (borrower agreed to pay "all of the costs associated with the collection of [the] delinquent account"—i.e., actual costs of collection). Accordingly, these cases are inapposite. *Cf. Zelner v. ATG Credit, LLC*, No. 17 C 8007, 2019 WL 556737, at *2 (N.D. Ill. Feb. 12, 2019) (contract creating the debt expressly required the plaintiff to pay "a collection fee," which the court found did *not* equate to the actual costs of collection). Similar to *Zelner*, here the Promissory Note provides that Plaintiff agrees to pay "reasonable collection costs"—*not* the actual costs of collection to GRC, or some other collector.

Plaintiff's argument that GRC's fees must reflect GRC's actual costs of collection is just another way of challenging the contingency model for percentage-based collection fees. As explained above, percentage-based contingency fees are the norm in this industry and do not run afoul of the FDCPA.

---

[5] Notably, the *Bradley* court acknowledged that an agreement allowing for the collection of a percentage-based fee would not run afoul to the FDCPA. *Bradley*, 739 F.3d at 610 (explaining that it is "the nature of the agreement between [the parties], not simply the amount of the fee that is important").

Indeed, the industry practice of paying debt collectors a contingency fee or flat fee rather than their actual costs of collection makes logical sense.  As a practical matter, calculating the actual costs incurred to the *debt collector* would be administratively burdensome and would undermine the efficiencies gained by utilizing a debt collector to pursue the debt. *See Washington*, 2009 WL 6636862, at *5 (the "formula adopted by the Department of Education [for collection costs] was intended 'to collect costs incurred by guarantors across the entire portfolio of defaulted loans, as opposed to attempting to calculate the actual collection costs incurred with respect to each loan.'"); *see also Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 800 (7th Cir. 2006) (the "Secretary allows guaranty agencies to charge borrowers a flat-rate percentage for collection costs that takes into account the total costs associated with the agency's entire defaulted student loan portfolio, as opposed to requiring the agency to track the individual charges associated with the collection of a particular borrower's account.").  As such, the percentage-based collection costs assessed here are reasonable and in accordance with the terms of the Promissory Note.

### iv.  The Promissory Note Does Not Require That Collection Costs Are "Necessary."

Plaintiff's claim that collection costs were unreasonable because they are not "necessary" is yet another way of arguing that collection costs should be based on GRC's actual collection costs instead of a contingency fee.  For all of the reasons set forth above, this claim fails.  The Promissory Note does not require that collection costs are "necessary"; it merely requires them to be "reasonable."  SF ¶ 4; PG Decl. Ex. 1.  Accordingly, collection costs do not need to reflect GRC's actual costs of collection.  Moreover, the collection costs were "necessary" in the sense that they equate to the fees Cornell must pay to GRC for collecting on the account. *Id.* ¶¶ 18, 21; Butts Decl. ¶¶ 7, 10.

14

**B.  GRC Accurately Informed Plaintiff of the Collection Costs Owed.**

Although Plaintiff claims that GRC violated the FDCPA by failing to inform Plaintiff that the collection costs represent an estimate of what is owed, the collection costs are not an estimate. Indeed, Plaintiff owes the full balance of her defaulted student loan, including the full amount of collection costs, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒.  Under the FDCPA, GRC is required to accurately report to Plaintiff exactly what is owed and that is precisely what GRC did. *See* 15 U.S.C. § 1692e (prohibiting the false representation of the amount of the debt owed). In each of GRC's letters, GRC accurately informed Plaintiff of what she owed as of that date, as itemized by principal, interest, late fees, and collection costs. SF ¶¶ 38–39; PG Decl. Ex. 5; Butts Decl. ¶ 10.  It was in no way misleading to inform Plaintiff that she owed the entire balance of collection costs at the time of that letter.  Even if Plaintiff paid less than the full balance owed, GRC would simply receive a lesser fee from Cornell.  *Id.* ¶ 27; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶ 14.  However, in that instance, the remaining unpaid balance would still be owed.  Therefore, it would never be false or inaccurate to inform Plaintiff that she owes the full balance of the unpaid student loan, including collection costs.  To the contrary, representing that Plaintiff owed less than the entire balance of collection costs would be false and potentially misleading in violation of the FDCPA.

**C.  The Collection Costs Were Properly Calculated.**

Plaintiff presents three theories in support of her claim that GRC miscalculated the collection costs, but those theories fail.  First, Plaintiff claims that the collection costs were miscalculated because they were based, in part, on "impermissible" late fees. SAC ¶ 13.  However, as explained above, late fees were explicitly permitted by the Promissory Note, and therefore the collection costs were accurately calculated.

Second, Plaintiff claims that the collection costs were miscalculated because they were based, in part, on accruing interest.  Contrary to Plaintiff's argument, it is not a violation of the FDCPA to calculate collection costs based on accruing interest and Defendant is aware of no case law where such practice has been found to violate the FDCPA.  Moreover, in the federal loan context, percentage-based collection costs based in part on interest is explicitly provided for by federal law.  *See supra* 5–6.  As such, the collection costs were properly calculated.

Finally, Plaintiff asserts that GRC sought collection costs in excess of what is provided for by the Agreement between GRC and Cornell, but that is not the operative contract.  SAC ¶ 14.  Under Section 1692f of the FDCPA, the collection of any amount must be "expressly authorized by the agreement *creating the debt*." 15 U.S.C. § 1692f(1).  Accordingly, the contract at issue is the Promissory Note—*not*, as Plaintiff contends, the Agreement between GRC and Cornell.  *See* SAC ¶ 14.  The Promissory Note does not specify the percentage of collection costs; it merely states that collection costs must be reasonable.  SF ¶ 4; PG Decl. Ex. 1.  Accordingly, as long as the collection costs assessed are reasonable, they do not violate the FDCPA.

Regardless, Plaintiff is incorrect that GRC sought collection costs in excess of what is provided for by the Agreement between GRC and Cornell.  Plaintiff's claim is that the Agreement provides for collection costs assessed as 33.33% of the balance owed, not 33⅓%.

SF ¶¶ 27–33; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶¶ 11–12, 14–15.

*Id.* ¶ 27; PG Decl. Ex. 4, Subsection V.D; *see also* Butts Decl. ¶ 14.



*Id.* ¶ 30; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶ 15.

*Id.* ¶ 31; Butts Decl. ¶ 15.

*Id.* ¶ 32; Butts Decl. ¶ 14.

*Id.* ¶ 33; PG Decl. Ex. 4, Subsection V.D; Butts Decl. ¶ 15.  Accordingly, the collection costs sought here did not exceed what was provided for by the contract between GRC and Cornell, and Plaintiff's claim fails.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that this Court grant GRC's Motion for Summary Judgment, and grant any further relief that this Court finds just, necessary, and proper.

Dated**:** February 27, 2020  
     New York, NY

Respectfully submitted,

**McGUIREWOODS LLP**

By: */s Philip A. Goldstein*  
Philip A. Goldstein  
pagoldstein@mcguirewoods.com  
1251 Avenue of the Americas, 20th Floor  
New York, New York 10020  
(212) 548-2100

Sarah A. Zielinski (*Pro Hac Vice*)  
Amy Starinieri Gilbert (*Pro Hac Vice*)  
77 W. Wacker Drive, Suite 4100

Chicago, IL 60601
(312) 849-8100
szielinski@mcguirewoods.com
agilbert@mcguirewoods.com

*Attorneys for Defendant*