**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASMIN R. FRANCIS, individually, and on behalf of all other similarly situated consumers, <br><br> Plaintiff, <br><br> vs. <br><br> GENERAL REVENUE CORPORATION, <br><br> Defendant. | Case No.: 1:18-cv-06955-BMC |

**DEFENDANT GENERAL REVENUE CORPORATION'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Philip A. Goldstein
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York NY 10020
(212) 548-2167
*pagoldstein@mcguirewoods.com*

Sarah A. Zielinski (*Pro Hac Vice*)
Amy Starinieri Gilbert (*Pro Hac Vice*)
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 849-8100
*szielinski@mcguirewoods.com*
*agilbert@mcguirewoods.com*

*Counsel for Defendant General Revenue Corporation*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.     Late Fees Are Expressly Authorized By the Promissory Note............................ 2

II.    "Reasonable Collection Costs"—*Not* GRC's Actual Costs of Collection—Are Expressly Authorized By the Promissory Note. .............................................. 4

III.   Plaintiff Presented *Zero* Authority That                are Unreasonable............................................................................................................. 7

IV.   GRC Properly Sought Collection Costs at the Time of the Letter........................ 8

V.    GRC Properly Calculated Collection Costs. ........................................................ 9

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bass v. I.C. Sys., Inc.*,
  316 F. Supp. 3d 1047 (N.D. Ill. 2018) ..............................................................9, 10

*Bernal v. NRA Grp., LLC*,
  No. 16 C 1904, 2017 WL 4948544 (N.D. Ill. Nov. 1, 2017), aff'd, 930 F.3d
  891 (7th Cir. 2019).....................................................................................5, 7, 9

*Bradley v. Franklin Collection Serv., Inc.*,
  739 F.3d 606 (11th Cir. 2014) .........................................................................5

*Gathuru v. Credit Control Servs., Inc.*,
  623 F. Supp. 2d 113 (D. Mass. 2009) ..........................................................6, 7, 8

*Kaymark v. Bank of Am., N.A.*,
  783 F.3d 168 (3d Cir. 2015), abrogated by *Obduskey v. McCarthy & Holthus
  LLP*, 139 S. Ct. 1029 (2019) ........................................................................2, 5

*Kojetin v. C.U. Recovery, Inc.*,
  No. CIV.97-2273(JRT/RLE), 1999 WL 33916416 (D. Minn. Feb. 17, 1999) ........................5

*Levine v. Creditors' Prot. Serv., Inc.*,
  No. 17 C 2537, 2019 WL 1077126 (N.D. Ill. Mar. 7, 2019) .................................6, 7

*Richard v. Oak Tree Grp., Inc.*,
  614 F. Supp. 2d 814 (W.D. Mich. 2008) ...............................................................5

*Shapiro v. Riddle & Assocs., P.C.*,
  240 F. Supp. 2d 287 (S.D.N.Y.), aff'd, 351 F.3d 63 (2d Cir. 2003)........................7

*Sparks v. EquityExperts.org, LLC*,
  936 F.3d 348 (6th Cir. 2019) ........................................................................8, 9

**Federal Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. al.*................................ *passim*

**Regulations**

34 C.F.R. § 674.45(e)(1)(i) and (ii) ..........................................................................8

## <u>INTRODUCTION</u>

This case is straightforward: Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claims against General Revenue Corporation ("GRC) fail because the Promissory Note between Cornell University ("Cornell") and Plaintiff provides for late fees and reasonable collection costs, and the collection costs here were reasonable.  First, late fees—which here amounted to only $18.34—were expressly authorized by the Promissory Note.  The Promissory Note provides for "charges necessary for any amount not paid when due."  There is nothing complicated about this contract provision—a "charge" is a penalty, and an "amount not paid when due," is a late payment.  Thus, the Promissory Note expressly authorizes penalties for late payments—i.e., late fees.

Second, collection costs—which here were 25% of total payments[1]—were expressly authorized by the Promissory Note, which provides for "reasonable collection costs."  The term "reasonable collection costs" is broad enough to encompass percentage-based fees, and therefore need not be specifically identified in the Promissory Note.  Moreover, the Promissory Note plainly provides for "reasonable collection costs," *not* GRC's actual costs of collection, and the FDCPA does not require that collection costs be tied to GRC's actual costs of collection. Finally, collection costs assessed as 25% of total payments is reasonable—in fact, federal law permits even higher percentage fees in the federal loan context—and Plaintiff provides no authority to the contrary.

Despite Plaintiff's efforts to distract from the straightforward nature of this case, Plaintiff has fallen short of creating a genuine issue of material fact.  This Court should grant summary judgment for GRC, and dismiss Plaintiff's FDCPA claims with prejudice.

---

[1] For second referral institutional loans, Cornell and GRC agreed that Cornell                                . SF ¶¶ 26–29.

<u>ARGUMENT</u>ERROR! BOOKMARK NOT DEFINED.

**I.      Late Fees Are Expressly Authorized By the Promissory Note.**

The Promissory Note expressly authorizes late fees.[2] When Plaintiff agreed to "pay all attorney's fees *and* other reasonable collection costs *and* charges necessary for the collection of any amount not paid when due," she agreed to pay three distinct items: (1) attorneys' fees; (2) reasonable collection costs; and (3) charges necessary for the collection of any amount not paid when due.  SF ¶ 4 (emphasis added). The third item provides for fees for late payments: "charges" are penalties, and an "amount not paid when due," is a late payment.[3]  Under New York law, *each* contract term must be given meaning.  *India.Com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005). Plaintiff's reading of this provision—i.e., treating "reasonable collection costs and charges necessary for the collection of any amount not paid when due" as listing only one item—fails to give meaning to costs *and* charges.[4]

Contrary to Plaintiff's contention, the word "charges" does not refer to a "variety of other charges" beyond late fees. Dkt. 47 at 10.  The word "charges" does not exist in isolation; it is tied to the phrase "necessary for any amount not paid when due."  As explained above, an "amount not paid when due" is a late payment.  Thus, the "charges" referred to in the Promissory Note are late payments.  Plaintiff all but concedes this: Plaintiff agrees that that the phrase "charges for any amount not paid when due" *can equal a late fee. Id.*  Although plaintiff contends that late fees are

---

[2] Plaintiff contends that GRC put forth five separate "methods" for demonstrating that the Promissory Note authorized late fees.  In reality, GRC set forth one straightforward reading of the contract, and provided multiple sources of support for its position.  Even Plaintiff's attempt to twist GRC's words cannot overcome the fact that the Promissory Note provided for late fees.

[3]     Merriam-Dictionary definition of "late" available at https://www.merriam-webster.com/dictionary/late ("coming or remaining after the due, usual, or proper time; of, relating to, or imposed because of tardiness"); Merriam-Dictionary definition of "charge" available at https://www.merriamwebster.com/dictionary/chrage ("to impose a financial burden on").

[4]     Merriam-Dictionary definition of "cost" available at https://www.merriam-webster.com/dictionary/cost ("expenditure as of effort or sacrifice made to achieve an object").

not "necessary," that argument fails. The purpose of late fees is to encourage timely payments; without late fees, there would be no enforcement mechanism to ensure compliance with the terms of the Promissory Note and Plaintiff would be free to disregard such terms without consequence. Thus, late fees are necessary for the collection of amounts not paid when due.

Because the Promissory Note clearly provides for late fees, summary judgment should be granted for GRC.  *See Hui-Wen Chang v. New York City Dep't of Educ.*, 412 F. Supp. 3d 229, 244 (E.D.N.Y. 2019).  But even if the Court were to find that the Promissory Note is ambiguous, this Court can still find in GRC's favor as a matter of law because the "evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary." *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157–58 (2d Cir. 2000).  Here, all of the evidence demonstrates that Plaintiff knew that she would be required to pay late fees under the Promissory Note.

First, Plaintiff signed an exit interview affirmatively acknowledging that she understood the Promissory Note to mean that she would be "charged late fees or penalty charges" if she failed to make a timely payment.  SF ¶¶ 6–8, 10–11. Although Plaintiff contends that she signed the exit interview under duress from Cornell, there is no evidence of duress.[5]  Plaintiff has presented zero contemporaneous evidence that at the time she participated in the exit interview she disagreed with the explanation of the Promissory Note, or that she contested the exit interview with Cornell. *See* PG Decl. Ex. 7 at 81:20–90:10. Instead, she signed the exit interview without incident, confirming

---

[5] Duress means the contract was procured by a threat, which was unlawfully made, and caused involuntary acceptance of contract terms. *Kramer v. Vendome Grp. LLC*, 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012).  Even *if* there was evidence of duress, Plaintiff waived her right to claim "duress" as she did not "act promptly to repudiate the contract." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001).

that she understood the Promissory Note to provide for late fees.[6]

Second, the evidence shows that after she defaulted on her loan, Cornell charged Plaintiff late fees and that Plaintiff never disputed those late fees with Cornell. Once again, this demonstrates that Plaintiff understood the Promissory Note to allow Cornell to charge late fees.

Finally, it was not until Plaintiff hired the attorney who filed this lawsuit that Plaintiff took the position that her Promissory Note does not allow for late fees.[7] If Plaintiff was truly concerned about the late fees assessed by Cornell, Plaintiff could have raised those concerns directly with Cornell at any point—and Cornell likely would have eliminated those fees—but Plaintiff still has not done so. Instead, Plaintiff and her attorney found it more lucrative to file this FDCPA class action lawsuit against GRC. Though the FDCPA is a strict liability statute, it is opportunistic for Plaintiff to raise her alleged concern about late fees for the first time in this lawsuit. This confirms that Plaintiff's self-serving interpretation of the Promissory Note is lawyer-driven and was not Plaintiff's contemporaneous understanding of the Promissory Note. *See Ocampo v. Client Servs., Inc.*, 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019).

## II.   "Reasonable Collection Costs"—*Not* GRC's Actual Costs of Collection—Are Expressly Authorized By the Promissory Note.

Plaintiff has provided no authority for the misplaced assertion that under the FDCPA,

---

[6] Moreover, Plaintiff's claim of "duress" is contrary to the legislative intent of exit interviews. Exit interviews, in the federal loan context, were designed to inform student borrowers of their loan obligations before graduation. *See* 34 C.F.R. § 674.42 (requiring that "exit counseling is conducted with each borrower…shortly before the borrower ceases at least half-time study;" the exit interview must, among other things, "explain the use of a Master Promissory Note" and disclose a "description of the charges imposed for failure of the borrower to pay all or part of an installment when due"). Though an institutional requirement, there is no evidence that Cornell forced Plaintiff to sign the exit interview under duress.

[7] *See* PG Decl. Ex. 7 at 24:13–32:19. In fact, though Plaintiff made a distinction between the terms of the exit interview and the terms of the Promissory Note, Plaintiff testified that she did not come up with that distinction on her own. *See* Francis Dep. 87:13–90:10 (**Q:** You made a distinction between the terms of the exit interview and the terms of the promissory note. Did you come up with that distinction on your own? **A:** I didn't.).

Plaintiff's collection costs must be tied to *GRC's* actual costs of collection.[8]  *See* Dkt. 47 at 13. Indeed, there is no bright line rule requiring collection costs to be tied to the collector's actual costs of collection; rather, whether collection costs are permissible under the FDCPA hinges on the language of the contract creating the debt.  *See Levine v. Creditors' Prot. Serv., Inc.*, 2019 WL 1077126, at *5 (N.D. Ill. Mar. 7, 2019).  Indeed, the cases Plaintiff relies upon reject percentage-based collection fees *only* because the contract exclusively provided for the collector's *actual* costs of collection. For instance, in cases where the contract provides for "costs of collection," "costs incurred," or "costs incident to collection," the court finds that such language requires collection costs to be tied to the collector's actual costs of collection.[9]

To the contrary, where the contract provides for "reasonable collection costs," courts find that such language is broad enough to encompass percentage-based collection fees.  *See Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 2d 113, 120 (D. Mass. 2009) (30% collection fee authorized by contract which provided for "collection costs"); *see also Bernal v. NRA Grp., LLC*, 2017 WL 4948544, at *2 (N.D. Ill. Nov. 1, 2017) (same); *Levine*, 2019 WL 1077126, at *5 (25% collection fee authorized by contract which provided for "reasonable collection expenses").

---

[8] Plaintiff claims that it is "undisputed" that GRC did not incur $1,680.04 in collection costs, but that is false.   There has been no calculation of GRC's actual costs of collection, and therefore, GRC's costs could very well be greater than $1,680.04.

[9] *See Kojetin v. C.U. Recovery, Inc.*, No. CIV.97-2273(JRT/RLE), 1999 WL 33916416, at *5 (D. Minn. Feb. 17, 1999) (contract provided that the plaintiff agreed to pay "costs incident to collection of due and unpaid installments," which the court interpreted as actual costs of collection); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609–10 (11th Cir. 2014) (contract provided for "costs of collection," which the court found required Plaintiff to "pay the actual costs of collection"); *Richard v. Oak Tree Grp., Inc.*, 614 F. Supp. 2d 814, 822–23 (W.D. Mich. 2008) (plaintiffs agreed "to pay ACI for ACI's collection costs and expenses incurred" due to their default, which the court found "limited plaintiffs' liability to [the creditor's] collection costs 'incurred,' i.e., their 'actual' collection costs"); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175–76 (3d Cir. 2015), *abrogated by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019) (contract provided that the lender was entitled to "collect all expenses incurred," which court interpreted as expenses that were actually incurred in connection with the default).

Here it is clear that the language of the Promissory Note is *not* limited in any way to GRC's actual costs of collection.   As in *Levine* and *Gathuru*, seeking to collect a percentage-based collection fee "cannot possibly constitute an unfair or unconscionable means to collect or attempt to collect a debt" where the Promissory Note obliges Plaintiff to pay "reasonable collection costs," which is broad enough to encompass a percentage-based fee.  *Id.* at *8; *Gathuru*, 623 F. Supp. 2d at 118.  Thus, the Promissory Note expressly authorized the percentage-based fee sought here.

Plaintiff contends that *Bernal* is inapposite, but Plaintiff is wrong.  *See Bernal*, 930 F.3d at 892.  In *Bernal*, the court addressed the same issue here: i.e., "whether a debt collector's fee counts as a collection cost" under the contractual provision providing for "any costs (including reasonable attorney's fees) incurred by Six Flags [the creditor] in attempting to collect amounts due."  *Id*.  The court held that "contract unambiguously permits Six Flags to recover any cost it incurs in collection past-due payments, and that includes a standard collection fee."  *Id*.  There, Six Flags hired a debt collector to help recover the balance, and the collector charged a "standard" collection fee of 25%. *Id*.  Notably, neither party disputed that 25% collection fee was reasonable, or that "arrangements like this are common in the market."  *Id*.  Just like Plaintiff here, the plaintiff in *Bernal* argued that the contract authorized only actual costs.  *Id*. at 893.  The court, however, found that the "contract never use[d] the term actual costs," and that nothing "in the text suggest[s] it should be read to restrictively."  *Id*. The court held that "any costs" included a "percentage-based collection fee."  *Id.*

The same is true here.  Though the Promissory Note expressly authorizes "reasonable collection costs" instead of "any costs," the term "collection costs" is broad enough to encompass percentage-based fees, and, as previously explained, seeking a 25% collection fee is reasonable. Plaintiff's argument that the Promissory Note also requires the collection costs to be necessary distorts the plain language of the contract.  The Promissory Note expressly authorizes "reasonable

collection costs *and* charges necessary for the collection of any amount not paid when due." SF ¶ 4.  Plaintiff is right—words *do* matter—which is exactly why it is impermissible for Plaintiff to take liberties with the contract language and rearrange the terms of the Promissory Note to read "reasonable and necessary collection costs."  This is not the case and Plaintiff's argument fails.

Moreover, the Promissory Note need not specifically identify percentage-based fees for those fees to be "expressly authorized." *See Levine*, 2019 WL 1077126, at *7 (no binding authority that requires a creditor's debt agreement with a consumer to specify that such a collection fee must explicitly state that the fee is percentage-based); *see also Bernal*, 2017 WL 4948544, at *2; *Gathuru*, 623 F. Supp. 2d at 118. Plaintiff's arguments are contradictory: on the one hand, Plaintiff insists percentage-based fees are not authorized because they are not explicitly identified in the Promissory Note, but on the other hand insists that the Promissory Note only provides for GRC's actual collection costs even though actual costs are not explicitly identified in the Promissory Note. This cannot be the case. The term "reasonable collection costs" encompasses percentage-based fees and therefore such fees were expressly authorized by the Promissory Note.[10]

## III. Plaintiff Presented *Zero* Authority That ▓▓▓▓▓▓▓▓▓▓▓ are Unreasonable.

Despite 50 pages of briefing, Plaintiff has still not put forth any authority that collection costs assessed as ▓▓▓▓▓▓▓▓▓▓▓▓ is unreasonable.[11]  *Shapiro v. Riddle & Assocs.,*

---

[10] Plaintiff's assertion that GRC should have insisted that Cornell enter into better contracts has no bearing on whether the collection fees were expressly authorized.  The terms of the Promissory Note are already clear—Plaintiff agreed to "reasonable collection costs," which encompasses percentage-based fees.

[11] Plaintiff erroneously insists that seeking a collection fee of 45% of the principal balance is unreasonable, but that is not how collection costs were assessed here.  When assessing percentage-based collection costs, courts look to what the creditor agreed to pay the collector for services rendered.  *See Gathuru*, 623 F. Supp. 2d at 116 (assessing collection costs based on agreement between creditor and collector).  Though Plaintiff continues to inflate the percentage fee, it is undisputed that Cornell and GRC's Agreement provides that Cornell will ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  SF ¶¶ 26–29. Moreover, Plaintiff states, without any authority,

*P.C.*, 240 F. Supp. 2d 287, 289–90 (S.D.N.Y.) (it is "plaintiff's burden at trial to establish that [the collection cost percentage] was unreasonable").  To the contrary, GRC has set forth evidence that collection costs of 25% of total payments made is reasonable. First, Congress has not put any cap on percentage fees. *Gathuru*, 623 F. Supp. 2d at 119 ("Congress could easily have…capped percentage fees—but it "chose not to do so.").  Second, the fact that federal regulations for certain federal allow collection costs of up to 40% of the total balance owed, supports that GRC's collection costs were reasonable.  *See* 34 C.F.R. § 674.45(e)(1)(i) and (ii).[12]  GRC is entitled to summary judgment because there is no dispute as to the reasonableness of the collection costs.

### IV.   GRC Properly Sought Collection Costs at the Time of the Letter.

It does not violate the FDCPA to seek percentage-based fees at the time of the letter merely because Cornell had not yet paid GRC for its collection services. Contrary to Plaintiff's argument, the collection fee sought by GRC is not an estimate—the collection fee represents a sum certain that Plaintiff owed at the time of the letter. *See Sparks v. EquityExperts.org, LLC*, 936 F.3d 348, 353 (6th Cir. 2019) ("[b]oth the amount and [the creditor's] contractual obligation are fixed the *moment* [the collector] performs a collection service that [the creditor] has agreed…to pay for."). The fact that the creditor "does not pay the cost at that time—or not at all…does not imply that 'costs' means something less than the actual cost that [the creditor] is obligated to pay."  *Id*.

The same is true here. Cornell's contractual obligation, and the amount it is required to pay GRC, is fixed the moment GRC performs collection services. Thus, the collection costs GRC sought represented a sum certain that was owed by Plaintiff at the time of the letter, *not*, as Plaintiff

---

that no consumer would think such high charges are reasonable. Dkt. 47 at 24–25. Plaintiff's lack of evidentiary basis is wholly insufficient to create a disputed fact on this point.

[12] The fact that Plaintiff's loan is not a federal loan does not undermine the persuasiveness of the fact that federal law permits collection costs up to 40% of the total balance owed. It cannot be the case that it violates one federal law to assess percentage-based fees that are expressly permitted by other federal laws.

contends, an estimate of costs Plaintiff did not yet owe.[13] *Id.* Several courts have agreed that a collector may seek collection costs at the time of the letter, regardless of whether the creditor had paid the collector for its services, and that to require otherwise would be unworkable. *See Sparks*, 936 F.3d at 352–53; *Bernal*, 2017 WL 4948544, at \*3; *Bass v. I.C. Sys., Inc.*, 316 F. Supp. 3d 1047, 1054 (N.D. Ill. 2018).[14]

## V.     GRC Properly Calculated Collection Costs.

GRC properly calculated collection costs by assessing such costs . The declaration provided by GRC President, Zenon Butts, does not, as Plaintiff contends, contradict Mr. Butts' deposition testimony or the Agreement between GRC and Cornell. In fact, Mr. Butts' deposition testimony confirms that the terms of the Agreement is a matter of simple math. Indeed, the ____. SF ¶ 27.

---

[13] Because GRC ascertained the collection costs with certainty and conveyed the exact amount owed in the letter, the scenario here is distinguishable from the case Plaintiff relies on, *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014), because there the attorneys' fees were not "even ascertained by the date of the collection letter." *See Bernal*, 2017 WL 4948544, at \*3. As set forth in GRC's response brief, the other cases Plaintiff relies on are also distinguishable. *See* Dkt. 46 at 25. Also, Plaintiff has asserted that she was at a "disadvantage" because by listing the amount owed as a sum certain, Plaintiff did not know her options regarding settlement. Dkt. 47 at 22. This argument is unfounded. The letter accurately states the amount due, and informs Plaintiff of her option to work with GRC to resolve the debt. PG Decl. Ex. 5 (letter states, "Please call 1-877-645-4104 to discuss payment arrangements based upon the balance owed and your financial situation. We are willing to work with you to pay off this debt.").
[14] As this Court explained in this case, Plaintiff "cannot validly state a claim for deception when defendant both accurately and in good faith represented the fees it was, or would be, seeking to collect." Dkt. 34 at 3. "Indeed," this Court explained, "I can't think of another way of sending a debt collection letter than by listing the debt sought to be collected at a certain point in time. The only alternative would be not to list the anticipated collection costs in the letter, which would invariably result in a separate FDCPA lawsuit for withholding that information." *Id.* Thus, Plaintiff's assertion that the collection costs are estimates fails.

 *Id.* ¶¶ 28, 34, 36.

 *Id.*

 *Id.* ¶¶ 29, 36–37.  During his deposition, Mr. Butts explained [redacted][15] As identified in Mr. Butts' testimony, [redacted].[16]  *Id.*  Though Mr. Butts stated that he could not explain why [redacted] yielded different results, the math speaks for itself and his testimony does not contradict the declaration.[17]

Moreover, it is not a violation of the FDCPA to calculate collection costs based, in part, on accruing interest, and Plaintiff provides zero authority to the contrary.  Indeed, for federal loans, percentage-based fees based in part on interest is explicitly provided for by federal law.  *See* 34 C.F.R. § 674.45(e)(1)(i) and (ii).  Moreover, the fact that collection costs are based, in part, on late fees, does not violate the FDCPA because late fees were authorized by the Promissory Note.

Dated: March 26, 2020          Respectfully submitted,
New York, NY

                     By: */s Philip A. Goldstein*

                     Philip A. Goldstein

---

[15] *See* PG Decl. Ex. 8 at 135:14–137:14 (**Q:** [redacted] ? **A:**  To see – because, with each missing 3, the balance is – is a penny or two different.  So I needed to see what we used to get to that. Because it's a – it's a calculation.)

[16] [redacted]

Plaintiff is wrong.  GRC applies the same calculation at issue in Mr. Butts' deposition, and as set forth by the terms of the Agreement. The math speaks for itself, such that GRC did not, and could not, concoct its own formula.

[17] Mr. Butts was not asked why the contract lists [redacted] He was only asked why the calculation yields different results.  *See* PG Decl. Ex. 8 at 137:11–14 (**Q:** So can you explain why my calculation got .23 and how yours got .40, or right next to it?  **A:** No, I cannot.)